SARAH KLUMPNER, a Minor, by Richard Kahn, her Guardian *ad litem*, Plaintiff-Appellee, v. GEORGE H. KLUMPNER, Defendant-Appellant.

First District (5th Division)   No. 1—87—3745

Opinion filed March 31, 1989.—Rehearing denied May 17, 1989.

William J. Harte, Ltd., of Chicago (William J. Harte and David J. Walker, of counsel), for appellant.

Robert E. Burke, of McHenry, for appellee.

PRESIDING JUSTICE MURRAY delivered the opinion of the court:

Defendant George H. Klumpner appeals from an order of the circuit court of Cook County denying his motions to vacate the registration of a foreign judgment and for a change of venue.

The foreign judgment at issue in this matter was entered by the Fourth Judicial District Court of Hennepin County, Minnesota, in 1984 after a number of proceedings instituted first in Illinois and subsequently in Minnesota. Specifically, on August 13, 1980, Judith Klumpner filed a petition for dissolution of her marriage to George in the circuit court of the Nineteenth Judicial Circuit, Lake County, Illinois, and sought custody of their minor child, Sarah, born December 31, 1978. Shortly thereafter, she left the marital home, taking Sarah with her without court approval, and moved to Minnesota, where her brother, Richard Kahn, resided. On September 3, 1980, Judith filed an amended petition alleging that George was guilty of extreme and repeated mental cruelty. On September 11, 1980, the court granted George visitation with Sarah. Judith subsequently filed a petition to vacate the visitation order, alleging George had psychiatric problems, was an alcoholic, and was a danger to Sarah. On September 24, 1980,

George sought a rule to show cause against Judith, alleging she had refused to comply with the court's visitation order and had taken Sarah to a location unknown to him. George also subsequently filed a counterpetition for a dissolution of the parties' marriage and sought custody of Sarah. On September 26, 1980, the court appointed an attorney for Sarah. That attorney later executed an affidavit wherein he stated that during approximately one year while he served as Sarah's attorney, he had uncovered "no evidence of wrongdoing" by George relative to any allegations made by Judith. On October 17, 1980, George filed a second petition for rule to show cause against Judith because she continued to refuse to allow him visitation with Sarah and was keeping her at a location unknown to him. On the same date, the court ordered the parties and Sarah to undergo psychiatric evaluation by a court-appointed psychiatrist and that its visitation order be given full effect.

The court entered a judgment of dissolution on July 9, 1981. On August 24, 1981, pursuant to an amended judgment, custody of Sarah was awarded to Judith by agreement of the parties, and George was to have visitation with Sarah in accordance with a schedule attached to the judgment. By an order dated September 2, 1981, the court specifically fixed George's visitation times through the summer of 1982 and expressly provided that visitation would be determined more liberally thereafter. On October 5, 1981, Judith filed an action in the Family District Court of Minnesota, entitled *In re* Custody of Sarah Nicole Klumpner, seeking to restrict George's visitation rights with Sarah. The Minnesota court dismissed the case on February 2, 1982, based on its ruling that Illinois had continuing primary jurisdiction over the matter; prior to the dismissal of Judith's action in Minnesota, George had filed a petition for change of custody in Lake County on December 28, 1981. On April 4, 1982, Judith also filed a petition in Lake County for modification of the marriage dissolution judgment, seeking to terminate George's visitation rights with Sarah based on her allegations that George had sexually abused Sarah during his visit with her in Minnesota on September 7, 1981, that he was an alcoholic, and that he had psychiatric problems.

The Lake County court conducted hearings on the parties' petitions on June 10 and September 7, 1982. During the June 10 hearing, Dr. Stanley W. Shapiro, Judith's psychiatric expert who practiced in the St. Louis-Minneapolis area, testified that based on two interviews with Judith and 35-month-old Sarah, George had sexually abused Sarah on September 7, 1981, in Minnesota. George's expert testified to the contrary; this expert examined George and Judith, but not

Sarah. At the September 7, 1982, hearing, Judith alleged that George had again abused Sarah on September 6, one day prior to that hearing. In describing the September 1982 incident, Judith referred to similar phrases allegedly used by Sarah and communicated to Dr. Shapiro concerning the September 1981 alleged molestation. No testimony was given by either of the parties' medical experts at the September 7 hearing regarding this alleged second incident. Closing arguments were made on September 21, 1982. On October 1, 1982, the court denied both parties' petitions; the court ruled that custody of Sarah should remain with Judith, found that there was no credible evidence that George ever physically or sexually abused Sarah, and found that Judith's belief that George's visits with Sarah were detrimental to her health was unsupported by any credible evidence and was irrational. The court further ordered that the parties and Sarah submit to extended psychiatric counseling, allowed George specific visitation with Sarah in Cook County, and continued the cause to February 11, 1983, for a status hearing concerning the progress of the counseling and as to visitation.

Judith and George both filed appeals from the September 21 order in Lake County. Judith subsequently filed two additional appeals from an order entered December 29, 1982, wherein the Lake County court found her in contempt for refusing to comply with its visitation orders and required her to obtain a $5,000 surety bond to insure her compliance thereafter, and an order dated January 13, 1983, denying, among other requested relief, her motion to vacate the December 29 order.

On December 19, 1983, the second district of this court, in an unpublished Rule 23 opinion (*In re Marriage of Klumpner* (1983), 119 Ill. App. 3d 1168), affirmed the trial court's orders denying George's and Judith's petitions for change of custody and termination of George's visitation rights, respectively, stating that where the evidence was conflicting, the trial court was in a far better position to determine the credibility of the witnesses. The court, however, reversed the trial court's order finding Judith in contempt of court but affirmed the order as to the requirement of posting a bond to assure compliance with the court's orders of George's visitation with Sarah. A subsequent petition for leave to appeal to our supreme court filed by Judith was denied.

Apparently shortly after the denial of Judith's petition for leave to appeal to the supreme court, Richard Kahn, Judith's brother, filed an action as *guardian ad litem* of Sarah in the juvenile division of the Fourth Judicial District, Hennepin County, Minnesota, entitled *In re*

the Matter of the Welfare of Sarah Klumpner,[1] to have Sarah adjudicated a dependent and neglected child. The identical allegations of sexual abuse of Sarah by George on September 7, 1981, and September 6, 1982, were reasserted in this action. The court conducted hearings on February 13 through 17, 23, and 24, 1984. In rendering its decision that George had sexually abused Sarah, the Minnesota court conceded that its findings contravened those of the Illinois courts, but stated its decision was based on "significant differences" in the evidence presented, *i.e.*, the court relied heavily on the testimony of Dr. Shapiro based on his interviews with Judith and Sarah *subsequent* to the Lake County proceedings and decisions. A disposition hearing was set for June 5, 1984. Prior to that time, George sent a letter to the court stating he would not appear at the hearing, asserting, among other reasons, that the Minnesota trial judge in the juvenile proceeding was not impartial (he had attended the same law school as Daniel Schermer, Judith's former Illinois babysitter and "new" husband, who was openly seeking to adopt Sarah); the evidence presented in the proceeding was "stale, manufactured or paid for"; and the juvenile court's decision was contrary to Illinois' interpretation of the almost identical evidence. The court subsequently terminated George's visitation rights until further order of the court.

At the time the Minnesota juvenile court proceeding was filed, a tort action was filed in the Minnesota district court on behalf of Sarah for money damages against George. Based on the juvenile court's findings that George had sexually abused Sarah, the district court awarded damages to Sarah in the tort action against George in the amount of $325,000.

On April 9, 1986, Richard Kahn, on behalf of Sarah, filed a petition in the circuit court of Cook County to register the Minnesota judgment. On June 24, 1986, George filed a motion to set aside the registration, arguing that the judgment was invalid because it was based on the findings on the Minnesota juvenile court, which lacked primary subject matter jurisdiction, that that court failed to give full faith and credit to Illinois' decision on the same issues, and the doctrine of *res judicata* precluded the Minnesota juvenile court from rehearing the case which had been "already heard in Illinois." The Cook County court denied the motion without prejudice and with leave to amend.

---

[1] It is unclear from the record when this action was filed and whether Richard Kahn was in fact ever legally the *guardian ad litem* of Sarah. However, in later Minnesota proceedings concerning this matter, the court did appoint a *guardian ad litem* other than Richard Kahn.

George filed an amended motion, again asking the court to set aside the registration of the judgment and, in the alternative, requested an evidentiary hearing in order to "apprise the court of certain unusual facts surrounding the Minnesota judgment," *i.e.*, counsel for the court-appointed *guardian ad litem* attended the same law school that Dan Schermer and the trial judge attended (graduating in 1972, 1969, and 1971, respectively), that Dan Schermer's father represented Richard Kahn, the petitioner and alleged *guardian ad litem* of Sarah, and that these relationships were never disclosed to George or made a matter of record in the juvenile court proceedings.

On March 18, 1987, George filed another motion seeking a change of venue from Cook County to Lake County. Both motions were denied, as was George's subsequent motion for reconsideration of those denials, and this appeal followed.

George, in opposing registration of the Minnesota judgment, contends: (1) the judgment sought to be registered is void because it was based on the decision of the Minnesota juvenile court, which did not have subject matter jurisdiction or, in the alternative, because Illinois had primary jurisdiction; (2) the Minnesota judgment should not be enforced in Illinois because the minor child was collaterally estopped from prosecuting her tort action in Minnesota; (3) Illinois should not give full faith and credit to Minnesota's judgment because Minnesota failed to give Illinois' judgment full faith and credit and ignored the principle of *res judicata*; and (4) the trial court erred in denying George's motion for a change of venue from Cook County to Lake County.

A foreign judgment is not conclusive if, among other reasons, the foreign court did not have jurisdiction over the subject matter. (Ill. Rev. Stat. 1985, ch. 110, par. 12—621(3).) The procedures by which a State court examines the question of the jurisdiction of the court of a sister State is a matter within the control of the States. (*Adam v. Saenger* (1938), 303 U.S. 59, 82 L. Ed. 2d 649, 58 S. Ct. 454.) We conclude that the Uniform Child Custody Jurisdiction Act (UCCJA), which has been adopted by both Illinois (Ill. Rev. Stat. 1987, ch. 40, par. 2101 *et seq.*) and Minnesota (Minn. Stat. Ann. §518A.01 *et seq.* (West Supp. 1989)) and applies to visitation rights as well as child custody (*Noga v. Noga* (1982), 111 Ill. App. 3d 328, 443 N.E.2d 1142), is dispositive of the jurisdictional issue in this appeal.

Under the UCCJA, " 'jurisdiction' refers not to the due process limits of potential subject matter or personal jurisdiction [citation], but rather to the legislature's discretionary limitation upon the exercise of existing jurisdiction." (*Noga*, 111 Ill. App. 3d at 330.) Thus, a

trial court, in order to exercise original jurisdiction (*In re Marriage of Dagher* (1986), 145 Ill. App. 3d 379, 495 N.E.2d 1004), as well as continuing jurisdiction over child custody and visitation determinations, must meet certain jurisdictional criteria, regardless of whether that court entered the original decree and specifically retained jurisdiction for enforcement thereof (*Noga v. Noga* (1982), 111 Ill. App. 3d 328, 443 N.E.2d 1142; see also Ill. Rev. Stat. 1987, ch. 40, par. 2104; Minn. Stat. Ann. §518A.03 (West Supp. 1989)). The same criteria also control with respect to questions of when a court of one State must recognize and enforce a foreign custody decree or when a court of one State may modify a custody decree rendered by a sister State. Even if a court meets that criteria, however, it *may* decline to exercise its jurisdiction, and we believe *must* in some cases, if it finds that it is an *inconvenient forum* for making such determinations, under the circumstances of the case, and that a court of another State is a more appropriate forum. (*Noga v. Noga* (1982), 111 Ill. App. 3d 328, 330-31, 443 N.E.2d 1142; Ill. Rev. Stat. 1983, ch. 40, par. 2108; Minn. Stat. Ann. §518A.07 (West Supp. 1989).) Illinois' and Minnesota's statutes are almost identical with respect to the factors to be considered in determining the inconvenience of a forum. Most pertinent to the instant action is the provision that "if the exercise of jurisdiction by a court of this State would contravene any of the purposes stated in Section 2 of this Act," the court may decline jurisdiction. Ill. Rev. Stat. 1983, ch. 40, par. 2108(c)(5); see also Minn. Stat. Ann. §518A.03 (West Supp. 1989).

██ In Illinois, the general purposes of the UCCJA, among others, are to:

"1. avoid jurisdictional competition and conflict with courts of other states in matters of child custody which have in the past resulted in the shifting of children from state to state *with harmful effects on their well-being*;

* * *

4. *discourage continuing controversies over child custody in the interest of greater stability of home environment and of secure family relationships for the child*;

5. deter abductions and other unilateral removals of children undertaken to obtain custody awards;

6. *avoid relitigation of custody decisions of other states in this State to the extent to which the avoidance of such relitigation is feasible* \*\*\*." (Emphasis added.) (Ill. Rev. Stat. 1983, ch. 40, par. 2102.)

Minnesota's provisions of section 518A.01, subdivisions 1(a), 1(b), and

1(c), correspond with Illinois' provisions 1, 5, and 6 of section 2, respectively. Although the Minnesota statute does not contain a specific provision similar to our provision 4 of section 2, it is clear that the purpose of provision 4 is encompassed by the language contained in section 518A.01, subdivision 1(a), of the Minnesota statute, *i.e.*, "the best interest of the child." See *Beier v. Beier* (Minn. App. 1985), 371 N.W.2d 52 (the purpose of the UCCJA is to minimize hardships on children by reducing opportunities for interjurisdictional controversies over child custody).

Another pertinent provision in both the Illinois and Minnesota statutes provides:

"§13. Binding Force and Res Judicata Effect of Custody Judgment. A custody judgment rendered by a court of this State which had jurisdiction under Section 4 binds all parties who have been served in this State or notified in accordance with Section 6 or who have submitted to the jurisdiction of the court, and who have been given an opportunity to be heard. *As to these parties the custody judgment is conclusive as to all issues of law and fact decided and as to the custody determination made* unless and until that determination is modified pursuant to law, including the provisions of this Act." (Emphasis added.) Ill. Rev. Stat. 1983, ch. 40, par. 2113.

See also Minn. Stat. Anh. §518A.12 (West Supp. 1989).

■ Based on the foregoing, we find in the instant case that the Illinois courts' decisions were *res judicata* of the Minnesota juvenile court proceeding and, additionally, that the Minnesota court lacked jurisdiction to enter its judgment because the exercise of its jurisdiction was in contravention of the purposes for which the UCCJA was enacted.

We first observe that the full faith and credit clause of the United States Constitution (U.S. Const., art. IV, §1) requires an application of *res judicata* where the parties involved in a matter are the same, or those in privity with them, and the cause of action and the subject matter of both suits are the same (*Hays v. Louisiana Dock Co.* (1983), 117 Ill. App. 3d 512, 452 N.E.2d 1383). Here, the Minnesota juvenile court apparently believed that the Illinois decisions were not *res judicata* of the proceeding before it because it found there was a "significant difference" in the evidence presented to it subsequent to the Illinois decisions. Specifically, the Minnesota court relied heavily on Dr. Shapiro's additional nine interviews with Sarah from September 13 to November 18, 1982, after George allegedly sexually abused Sarah a second time during a visit with her on September 6, 1982. We find,

however, that the Minnesota court's representation that Dr. Shapiro's later testimony before it amounted to "significant differences in the evidence from that presented in the Illinois court" to be factually unsupported by its written findings of fact and memorandum attached in support thereof and the record of proceedings in Illinois.[2] Like the Minnesota court's findings of fact which mirror all of Judith's allegations considered and rejected by the Illinois trial and appellate courts, Dr. Shapiro's testimony before the Minnesota court concerning his later interviews with Sarah mirrors Judith's allegations and the sexual descriptions of the alleged September 6, 1982, incident made during the September 7, 1982, hearing in the Lake County court. This "evidence" was therefore presented, considered, and rejected by the Lake County court and the second district of this court. We do not find any "significant difference" in this evidence merely because it was related by Judith at the September 7, 1982, hearing, rather than Dr. Shapiro, since the identical situation—Judith's allegations and descriptions concerning the September 7, 1981, alleged incident of sexual abuse and Dr. Shapiro's testimonial corroboration in similar terms—was also considered and rejected by the Illinois courts; apparently the second alleged incident carried no more weight than the first. In effect, therefore, the Minnesota juvenile court relitigated the facts presented to and disposed of by the Illinois courts, since the Minnesota cause of action and its subject matter, although brought in the juvenile court, constituted the same cause of action and subject matter litigated in Illinois. Moreover, Sarah, upon whose behalf the juvenile court proceeding was instituted, was in privity with Judith in the Illinois proceedings, *i.e.*, Sarah's interests were closely aligned with Judith's, thereby making Judith her virtual representative. (See *Johnson v. Nationwide Business Forms, Inc.* (1981), 103 Ill. App. 3d 631, 431 N.E.2d 1096.) In light of the foregoing, therefore, the Illinois courts' judgments were *res judicata* of the Minnesota juvenile court action.

---

[2]Section 518A.22 of the UCCJA provides that "[i]f a custody decree has been rendered in another state concerning a child involved in a custody proceeding *pending* in a court of this state, the court of this state upon taking jurisdiction of the case *shall* request of the court of the other state a certified copy of the transcript of any court record and other pertinent documents which have been preserved by the court of the other state." (Emphasis added.) (Minn. Stat. Ann. §518A.22 (West Supp. 1989); see also Ill. Rev. Stat. 1983, ch. 40, par. 2123.) Although there was no pending proceeding in Illinois at the time the juvenile court proceeding was filed, we believe that considering the seriousness of a custody/visitation rights matter, the Minnesota court would nonetheless request the record of proceedings in Illinois. It is unclear whether the Minnesota court did so and had the same record before it as this court.

We also find that the Minnesota juvenile court lacked jurisdiction because its exercise of jurisdiction contravened the purposes underlying the UCCJA. We first note that plaintiff's reliance on *Sullivan v. Sullivan* (1981), 98 Ill. App. 3d 928, 424 N.E.2d 957—for the proposition that where another State fails to give full faith and credit to a judgment of Illinois, Illinois nonetheless is obligated to give full faith and credit to the other State's later judgment—is misplaced under the circumstances here. At issue in *Sullivan* was the payment of past-due support and maintenance obligations. The case before us is a custody matter. Certainly the custody of children and payment of monies require different considerations, as evidenced by the UCCJA, which specifically provides that a "custody determination," which includes visitation rights, *does not* include a decision relating to child support or any other monetary obligation of any person. (Ill. Rev. Stat. 1983, ch. 40, par. 2103.02; see also Minn. Stat. Ann. §518A.02(b) (West Supp. 1989).) Accordingly, we must consider application of the full faith and credit clause in conjunction with the specific provisions of the UCCJA and its underlying policy considerations.

As stated previously, recognition of the full faith and credit clause requires application of *res judicata* where the parties involved are the same, or those in privity with them, and the cause of action and the subject matter of both suits are the same. (*Hays v. Louisiana Dock Co.* (1983), 117 Ill. App. 3d 512, 452 N.E.2d 1383.) The UCCJA also provides for application of *res judicata* (Ill. Rev. Stat. 1983, ch. 40, par. 2113; see also Minn. Stat. Ann. §518A.12 (West Supp. 1989)). To give full faith and credit to the Minnesota juvenile court's judgment over Illinois' would require us to completely ignore the *res judicata* doctrine, in contravention of the purposes of the UCCJA, three of which most importantly are to avoid continuing controversies over child custody in the interest of greater stability in the home environment and secure family relationships for the child, to avoid harmful effects on the well-being of the child, and to avoid relitigation of custody matters. (Ill. Rev. Stat. 1983, ch. 40, par. 2102; Minn. Stat. Ann. §518A.01 (West Supp. 1989).) In other words, were we to hold otherwise, an unsuccessful litigant in Illinois would be free to relitigate in other State forums, after establishing a six-month residence and complying with other jurisdictional requirements of the UCCJA in those States which have adopted it, until a favorable forum was found which would interpret the same evidence before it as "significantly different" from the evidence presented in the original forum. During the interim, a minor child would be subjected to continuous instability in the family relationship and suffer harmful effects to her well-being. This is not the same

situation which would obtain and for which the UCCJA provides where new circumstances, never litigated, would arise.

Accordingly, notwithstanding the general rule that where inconsistent judgments exist, the full faith and credit clause requires the latest judgment to be controlling in a third action between the parties (*Treinies v. Sunshine Mining Co.* (1939), 308 U.S. 66, 84 L. Ed. 85, 60 S. Ct. 44), we believe that it is of paramount importance that where child custody and visitation rights are involved, the doctrine of *res judicata* must be strictly applied prior to a second forum assuming jurisdiction over such matters involving the same facts and same parties, in compliance with the purposes of the UCCJA, so that a third action between the same parties based on the same facts cannot arise.

Here, Minnesota's exercise of jurisdiction in the juvenile proceeding contravened the policy considerations for which the UCCJA was enacted; it should have declined jurisdiction under section 8 of the UCCJA (Ill. Rev. Stat. 1983, ch. 40, par. 2108(c)(5); Minn. Stat. Ann. §518A.07(3)(e) (West Supp. 1989)). Its judgment is therefore void. As a result, the Minnesota judgment rendered in the tort action on behalf of Sarah and registered in this State, which was based on the juvenile court's findings of sexual abuse of Sarah by George, is also void. See *Crist v. Quam* (1984), 126 Ill. App. 3d 167, 466 N.E.2d 1223; Ill. Rev. Stat. 1987, ch. 110, par. 12—621(3).

■■ ■ We further find, in any event, that Sarah was collaterally estopped from prosecuting a tort action against George in Minnesota based upon her allegations of George's sexual abuse of her. Collateral estoppel applies where the following requirements are met: (1) the issue decided in the prior adjudication is identical to that presented in the action in question; (2) a final judgment on the merits was rendered in the prior action; and (3) the party against whom estoppel is asserted is the same as or in privity with a party to the prior adjudication. (*Illinois State Chamber of Commerce v. Pollution Control Board* (1979), 78 Ill. 2d 1, 398 N.E.2d 9.) As discussed above, these requirements have been met.

In light of the foregoing, we find it unnecessary to address any other issues raised in this appeal.

The judgment of the circuit court of Cook County granting registration of the Minnesota judgment is reversed.

Reversed.

LORENZ and PINCHAM, JJ., concur.