*In re* MARRIAGE OF JOYCE B. RIZZA, n/k/a Joyce B. Olsewski, Petitioner-Appellee, and JAMES F. RIZZA, Respondent-Appellant.

Second District   No. 2—91—1408

Opinion filed November 6, 1992.

Neal W. Cerne, of Mirabella & Kincaid, P.C., of Wheaton, for appellant.

Jeanne E. Galvin, of Caluwaert, Panegasser, Hancock & Schousen, of Elmhurst, and Mark E. Kowalczyk, of Glen Ellyn, for appellee.

JUSTICE NICKELS delivered the opinion of the court:

On September 4, 1991, the circuit court entered an order quashing a previously issued writ of attachment for petitioner, Joyce Rizza (n/k/a Joyce Olsewski), and relinquishing jurisdiction to the courts of Louisiana over a custody dispute between the parties concerning their two minor children. Respondent, James Rizza, appeals that order and asserts: (1) such order ·was void because it was entered without notice to James; and (2) the circuit court erred in relinquishing custody to Louisiana because the circuit court failed to comply with the Uniform

Child Custody Jurisdiction Act (Ill. Rev. Stat. 1987, ch. 40, par. 2101 *et seq.*). We affirm.

At the onset, we note that our review is complicated by the less than complete record in this proceeding. In 1989, the circuit court agreed to relinquish jurisdiction to the Louisiana courts in a telephone conversation during which all parties were represented. However, no order reflecting that determination was entered. Nor is the supplemental record provided by Joyce complete, despite the inclusion of James' 1990 petition to the Louisiana courts. The order that resulted from such petition is present in the supplemental record as is the order entered in a prior proceeding in Louisiana. However, the pleadings from that prior proceeding were not so included. Because it was James' burden to provide the record, we construe any doubts arising from omissions in the record against him and presume that the court below acted in conformity with the law. *Foutch v. O'Bryant* (1984), 99 Ill. 2d 389, 391-92; *Frisch Contracting Service Co. v. Personnel Protection, Inc.* (1987), 158 Ill. App. 3d 218, 221.

An order of dissolution was entered dissolving the marriage of the parties in 1987 and awarding sole custody of the two minor children to Joyce. On August 1, 1989, James sought a restraining order, which was granted August 23, 1989, to prohibit Joyce from removing the children from Illinois. Sometime prior to October 3, 1989, James was informed by the circuit court clerk child support division that Joyce had moved to Louisiana with the children in violation of the circuit court's August order. James thereafter sought custody of the children and a rule to show cause why Joyce should not be held in contempt for failure to obey the circuit court's restraining order. The circuit court granted James temporary custody of the two children on October 23, 1989, and, after Joyce failed to appear on the rule to show cause, issued a writ of attachment. In March 1990, the circuit court granted James' subsequent petition to terminate his child support obligation. However, the children remained in Louisiana with Joyce throughout this entire time.

On May 22, 1990, James petitioned the Louisiana courts for a rule to show cause against Joyce alleging as a basis the outstanding Illinois warrant for her arrest, which stemmed from criminal charges also based on her removal of the children from Illinois. In addition, James sought temporary custody of the children to be placed with the children's division of the Louisiana department of social services, which was immediately granted. Based on James' subsequent petition to consolidate such petition with one pending before the Louisiana court, we concluded that Joyce had previously invoked the jurisdiction

of Louisiana. However, prior to such consolidation, the Louisiana court considered the merits of Joyce's petition and entered an order on July 19, 1990, finding it in the best interests of the children to assume jurisdiction, denying James' exception to jurisdiction, and returning temporary custody of the children to Joyce.

In September 1991, Joyce surrendered to the Du Page County sheriff pursuant to a writ of extradition on the criminal charges pending against her. The criminal court released Joyce on her own recognizance. She then appeared, while still in the custody of the sheriff's office and without notice to James, before the civil circuit court pursuant to its October 23, 1989, writ of attachment. Joyce presented an uncertified copy of the Louisiana court's order assuming jurisdiction, denying James' exceptions to such jurisdiction, and granting her temporary custody of the children, in addition to letters from her physicians detailing physical limitations due to Joyce's high-risk pregnancy. The court noted that it had issued the writ of attachment in 1989 and neglected to vacate it for the sole purpose of insuring that the custody issues would be addressed if Joyce returned to Illinois. However, in light of the pending criminal matter based on the same conduct, on which the criminal court had decided to allow a personal recognizance bond, and because of Joyce's condition and its prior agreement to relinquish jurisdiction to the Louisiana court, the circuit court vacated its writ of attachment. It, therefore, included in its written order the finding that Louisiana had accepted jurisdiction, to which the circuit court had previously agreed, pursuant to the Uniform Child Custody Jurisdiction Act.

James subsequently petitioned to vacate that order, for the first time raising the issue of jurisdiction before the circuit court. The circuit court denied James' petition to vacate and also denied his petition for rehearing.

At the hearings on those motions, James' attorney and the court both acknowledged the telephone call that occurred between the judge of the circuit court and the Louisiana judge on the subject of jurisdiction. Both recalled that the conversation took place in 1989 at the time of James' petition for custody and issuance of the writ of attachment, and the circuit court further recalled that the Louisiana court had initiated the contact. The Louisiana court could not initiate a call prior to any attempt to invoke its jurisdiction, and, therefore, we have concluded that Joyce had already initiated proceedings in Louisiana at that time. The substance of the conversation was that the Louisiana court had assumed jurisdiction as in the best interests of the children, who continued to remain in Louisiana, and that the Louisiana court

would not relinquish such jurisdiction. Therefore, the circuit court had exercised its discretion and had agreed to relinquish its own jurisdiction.

James appeals and asserts that the circuit court's order of September 4, 1991, quashing its writ of body attachment and memorializing its 1989 agreement to relinquish jurisdiction to the Louisiana court was void because James was not notified of the matter. James also asserts that the Illinois court relinquished jurisdiction to Louisiana in contravention of the purposes of the Uniform Child Custody Jurisdiction Act, and, therefore, such order was an abuse of discretion and should be reversed.

■ The purpose of civil contempt is to coerce compliance with the order of a court. (*In re Marriage of Logston* (1984), 103 Ill. 2d 266, 289; *In re Marriage of Betts* (1990), 200 Ill. App. 3d 26, 44.) Both a rule to show cause and a writ of attachment are merely means by which to bring an alleged contemnor before the court when the failure to comply with an order of the court is the alleged contemptuous behavior. (See *In re Marriage of Betts*, 200 Ill. App. 3d at 52-53; *Ex Parte Petrie* (1865), 38 Ill. 498, 501-02.) A finding of civil contempt is not proper unless the means to purge the alleged contempt is within the power of the contemnor, and, therefore, a finding of civil contempt cannot survive the dismissal of the underlying action that was its basis. (*In re Marriage of Logston*, 103 Ill. 2d at 289.) Thus, if the circuit court properly exercised its discretion in agreeing to relinquish jurisdiction to the Louisiana court at the time of James' Illinois petition in 1989, there was no longer an underlying custody action in Illinois, no means by which Joyce could purge herself of the alleged contempt, and no basis to find Joyce in contempt or to support a writ of attachment. Therefore, we must first determine if the circuit court properly relinquished its jurisdiction to the courts of Louisiana.

■ The purposes of the Uniform Child Custody Jurisdiction Act are primarily to avoid jurisdictional competition and conflicts with other States, to protect the best interests of the child, and to discourage forum shopping. (*In re Marriage of Mauro* (1989), 187 Ill. App. 3d 794, 796; Ill. Rev. Stat. 1987, ch. 40, par. 2102.) If another State in substantial accordance with the jurisdictional standards of the Uniform Child Custody Jurisdiction Act modifies a custody order, Illinois courts will recognize and enforce such modification. *Jennings v. Jennings* (1985), 133 Ill. App. 3d 753, 755.

■ The jurisdictional standards of the Uniform Child Custody Jurisdiction Act permit the exercise of jurisdiction on four bases. First, a court has jurisdiction based on being a child's home State, ei-

ther at the time the proceeding was commenced or within the prior six months if one parent continues to reside within the State and the other parent removed the child from the State. (Ill. Rev. Stat. 1987, ch. 40, par. 2104(a)(1).) A forum may also exert jurisdiction if it is in the best interests of the child either because one of the contestants or the child has significant contacts with the forum, or because the necessary evidence is located there. (Ill. Rev. Stat. 1987, ch. 40, par. 2104(a)(2).) If a child has been abandoned in a State or there is an emergency requiring protection of the child, such State may exert jurisdiction. (Ill. Rev. Stat. 1987, ch. 40, par. 2104(a)(3).) Finally, if no other State has jurisdiction based on the above factual situations or has declined jurisdiction and it is in the best interests of the child, a forum may exercise its jurisdiction. Ill. Rev. Stat. 1987, ch. 40, par. 2104(a)(4).

We first note that Louisiana obtained jurisdiction in substantial compliance with the Uniform Child Custody Jurisdiction Act because Louisiana was the home State of both Joyce and the children at the time she commenced a proceeding in that forum. (See Ill. Rev. Stat. 1987, ch. 40, par. 2104(a)(1)(i).) The Louisiana court considered and denied James' exceptions to its jurisdiction on the merits, and it made a specific finding that it was in the best interests of the children that it exercise jurisdiction (Ill. Rev. Stat. 1987, ch. 40, par. 2104(a)(2)), which arguably could have been based either on the evidence present in the forum concerning the children's interests (Ill. Rev. Stat. 1987, ch. 40, par. 2104(2)(i)) or on the connection of the children or Joyce to the forum (Ill. Rev. Stat. 1987, ch. 40, par. 2104(2)(ii)). In addition, in 1990 at which time *James* commenced a proceeding for custody in Louisiana, that forum had been the home State of Joyce and the children for over six months. (See Ill. Rev. Stat. 1987, ch. 40, par. 2104(a)(1)(ii).) Thus, the question becomes whether, in light of such jurisdiction, the circuit court properly found that Illinois was an inconvenient forum.

Considerations similar to those to obtain jurisdiction are relevant to a determination to relinquish or defer jurisdiction to another forum. (Ill. Rev. Stat. 1987, ch. 40, par. 2108.) The child's home State, the location of necessary evidence of the child's well-being, and the significant relationships of the child or parties to the competing States are considerations to be weighed in determining whether Illinois is an inconvenient forum. (Ill. Rev. Stat. 1987, ch. 40, par. 2108.) However, James argues that it is the final consideration of whether the exercise of jurisdiction contravenes any of the purposes of the Uniform Child Custody Jurisdiction Act that should control. (See Ill.

Rev. Stat. 1987, ch. 40, par. 2108(c)(5).) Specifically, James asserts that the purpose of the Uniform Child Custody Jurisdiction Act to discourage removal from the State by a noncustodial parent is paramount. Ill. Rev. Stat. 1987, ch. 40, par. 2102(a)(5).

■ Although we condemn in no uncertain terms Joyce's conduct in removing the parties' children from the State in violation of the circuit court's order, she had custody of the children at the time. Therefore, she did not unilaterally remove the children from Illinois for the purpose of obtaining custody. (See Ill. Rev. Stat. 1987, ch. 40, par. 2102(a)(5).) In addition, we note that such removal alone would be an insufficient basis on which to alter a custody decision. (*In re Marriage of Gunter* (1981), 93 Ill. App. 3d 1043, 1049.) Further, all of the purposes of the Uniform Child Custody Jurisdiction Act must be considered within the confines of the conduct of both the parties, and, contrary to James' assertion, the paramount consideration remains the best interests of the child (*In re Marriage of Doehner* (1991), 215 Ill. App. 3d 570, 572).

■ Although the Uniform Child Custody Jurisdiction Act (Ill. Rev. Stat. 1987, ch. 40, par. 2104 *et seq.*) provides guidelines by which conflicts in jurisdiction may be resolved (*In re Marriage of Thompson* (1983), 96 Ill. 2d 67, 76-77, *cert. denied* (1983), 464 U.S. 895, 78 L. Ed. 2d 232, 104 S. Ct. 242), a court does not act improperly with regard to the exercise of its jurisdiction where the issue is not raised until the cause has been heard on the merits (*In re Marriage of Thompson*, 96 Ill. 2d at 77-78; see also *In re Marriage of Mauro*, 187 Ill. App. 3d at 797). Rather, Illinois courts are required to give full faith and credit to such a determination on the merits. (*Klumpner v. Klumpner* (1989), 182 Ill. App. 3d 22, 29; Ill. Rev. Stat. 1987, ch. 40, par. 2113.) Nor can a party who has invoked the jurisdiction of a forum in compliance with the Uniform Child Custody Jurisdiction Act later be heard to complain of the exercise of such jurisdiction. *Jennings*, 133 Ill. App. 3d at 756.

In *In re Marriage of Thompson*, the mother took the parties' son to her parents' home in Michigan prior to the husband's filing for dissolution and temporary custody of the child, which was granted. Five days later, the mother obtained an order from the Michigan court granting temporary custody of the child to her. Several weeks later, the father kidnapped the child from the mother in Michigan. During closing arguments on the father's petition for dissolution over a year after these events began, the mother for the first time asserted that Illinois had improperly exerted its jurisdiction and should have de-

ferred to Michigan, which the circuit court properly declined to do. *In re Marriage of Thompson*, 96 Ill. 2d at 77-78.

Similarly, in *Jennings*, the mother, who resided in Illinois and had permanent custody of the parties' children, chose the courts of Kansas, which had made the original custody determination and remained the father's home State and where the children spent summers and had significant contacts, to determine a subsequent disputed custody issue. The Illinois court thereafter properly declined to exercise its jurisdiction to modify such custody determination relying in significant part on the mother's invocation of the jurisdiction of the complained-of forum. *Jennings*, 133 Ill. App. 3d at 756.

■ Under these facts and in reliance on *In re Marriage of Thompson* and *Jennings*, we find dispositive James' presence in 1989 when the circuit court verbally agreed to relinquish jurisdiction to the Louisiana forum and his initiation of and participation in the proceedings in that forum in 1990, which included a consideration of his exceptions to jurisdiction and the finding that it was in the best interests of the children that Louisiana exert its jurisdiction. James does not dispute that the Louisiana court assumed jurisdiction over this matter in 1989. James' counsel was present during the telephone conversation in which the jurisdictional dispute was resolved in favor of the Louisiana forum. Louisiana determined that it was in the best interests of the children that it assume jurisdiction, which the Illinois circuit court therefore agreed to relinquish. In addition, James himself invoked the jurisdiction of the Louisiana court in 1990 and presented his exceptions to the jurisdiction of that court at that time, which the Louisiana court heard and rejected.

We conclude that in 1989, with James' knowledge and participation, the Louisiana courts acquired sole jurisdiction over this custody matter, and James participated in a determination of the merits of his jurisdictional claims in that forum in 1990. Thus, the circuit court's written order of September 4, 1991, did no more than memorialize its 1989 agreement to relinquish jurisdiction to Louisiana and was not the entry of a new order requiring notice to James. (See *Maras v. Bertholdt* (1984), 126 Ill. App. 3d 876, 881 (alteration of oral order requires notice).) The circuit court did not abuse its discretion in refusing to again consider James' jurisdictional challenge, the merits of which the Louisiana court already determined. See *In re Marriage of Thompson*, 96 Ill. 2d at 77-78.

Thus, we find that at the time it quashed its writ of attachment and entered its order memorializing its prior agreement to relinquish jurisdiction, the circuit court had already determined that the Louisi-

ana court had jurisdiction in substantial accordance with the Uniform Child Custody Jurisdiction Act and that Illinois was an inconvenient forum. As a further result of relinquishing its jurisdiction to Louisiana, there was neither an underlying action nor the possibility that Joyce could purge herself of the alleged contempt, and the circuit court was required to quash its improperly entered writ of attachment. See *In re Marriage of Logston*, 103 Ill. 2d at 289.

The order of the circuit court quashing the writ of attachment for petitioner and relinquishing jurisdiction of the custody dispute between the parties to the Louisiana forum is affirmed.

Affirmed.

INGLIS, P.J., and DOYLE, J., concur.