THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JOYCE B. OLSEWSKI, Defendant-Appellant.

Second District    No. 2—92—0363

Opinion filed February 22, 1994.

Mark E. Kowalczyk, of Glen Ellyn, for appellant.

James E. Ryan, State's Attorney, of Wheaton (William L. Browers and David A. Bernhard, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE COLWELL delivered the opinion of the court:

Defendant, Joyce B. Olsewski, was convicted after a bench trial of child abduction (Ill. Rev. Stat. 1989, ch. 38, par. 10—5(b)(2) (now 720 ILCS 5/10—5(b)(2) (West 1992))). The issue raised on appeal is whether a trial court may order a parent convicted of abducting her own children to turn over custody of the children to the other parent when the parent/offender had legal custody of the children at the time she committed the offense. We reverse.

The testimony and other evidence received at trial revealed that in 1987 the circuit court of Du Page County entered an order dissolving the marriage of defendant and James Rizza (James) and awarding sole custody of the two minor children, Carl Anthony Rizza and Grace Marie Rizza, to defendant. The court awarded James reasonable visitation. Early in 1989, defendant learned that her current

husband, Robert Olsewski, was being transferred to Louisiana by his employer. Accordingly, in May 1989, defendant moved to Louisiana with her husband and her children.

On August 15, 1989, defendant returned to Illinois to conclude the sale of her Illinois home. Upon returning she found a packet of papers on her doorstep instructing her to appear in court on August 16. James had filed a petition for a rule to show cause and sought a restraining order prohibiting defendant from removing the children from Illinois.

Both defendant and James appeared in court on August 16, but neither was represented by an attorney. The judge informed defendant that she could not remove the children outside of the jurisdiction without the permission of the court. Defendant stated that she was not aware that she had to obtain the permission of the court and explained that she was under the impression that James had no objection to her move to Louisiana. She also explained that her son was scheduled to start school in Louisiana in two weeks. The judge ordered her to obtain an attorney and appear back in court on August 23.

Defendant returned to Louisiana on August 17. She did not appear in court on August 23, and on that date the court entered a written order directing defendant not to remove the children from Illinois. On October 3, 1989, James petitioned the court for a change of custody. Defendant did not appear at the October 23 hearing on the petition, and the court on that date awarded temporary custody of the children to James and issued a writ of attachment.

The children remained with defendant in Louisiana. Defendant subsequently initiated custody proceedings in the Louisiana court. James participated in these proceedings. On November 6, 1992, this court affirmed the circuit court's order of September 4, 1991, quashing the writ of attachment and relinquishing jurisdiction over the custody dispute to the Louisiana court. See *In re Marriage of Rizza* (1992), 237 Ill. App. 3d 83, 91.

Defendant was charged with child abduction on September 7, 1990. The indictment alleged that defendant violated section 10—5(b)(1) of the Criminal Code of 1961 (Ill. Rev. Stat. 1991, ch. 38, par. 10—5(b)(1) (now 720 ILCS 5/10—5(b)(1) (West 1992))) by removing the children from Illinois in violation of the October 23, 1989, order granting James temporary custody of the children. Defendant surrendered to the trial court on September 4, 1991. On January 8, 1992, defendant was charged by indictment with two additional counts of child abduction. These counts alleged violations of section 10—5(b)(2) (Ill. Rev. Stat. 1991, ch. 38, par. 10—5(b)(2) (now 720 ILCS

5/10—5(b)(2) (West 1992))) stemming from defendant's failure to obey the court's orders of August 16, and August 23, 1989.

The court held a bench trial on January 9, 1992, and entered a finding of guilty as to additional count II, which alleged that defendant violated the court's order of August 16, 1989. The court concluded, however, that, because the evidence did not demonstrate that defendant received notice or was aware of the orders of August 23, and October 23, 1989, she did not intentionally violate them. Accordingly, the court entered findings of not guilty with respect to count I and additional count III. On March 6, 1992, the trial court sentenced defendant to a period of 20 days' incarceration in the Du Page County jail and 30 months' probation. As a condition of her probation, the trial court also ordered defendant to "cause Carl Anthony Rizza and Grace Marie Rizza to be returned to their lawful custodian, James Rizza within 30 days of this order." Defendant filed a timely notice of appeal.

Although defendant does not raise the issue on appeal, we believe defendant should not have been convicted of child abduction. Defendant was convicted pursuant to section 10—5(b)(2) of the Criminal Code of 1961, which reads: "[a] person commits child abduction when he or she *** [i]ntentionally violates a court order prohibiting the person from *** removing the child from the jurisdiction of the court." (Ill. Rev. Stat. 1989, ch. 38, par. 10—5(b)(2) (now 720 ILCS 5/10—5(b)(2) (West 1992)).) However, section 10—5(c)(1) reads: "[i]t shall be an affirmative defense that *** [t]he person had custody of the child pursuant to a court order granting legal custody *** which existed at the time of the alleged violation." (Ill. Rev. Stat. 1989, ch. 38, par. 10—5(c)(1) (now 720 ILCS 5/10—5(c)(1) (West 1992)).) It is undisputed that defendant had sole legal custody of the children on August 16, 1989, the date of the order which she had allegedly violated by moving to Louisiana in May 1989.

Defendant's counsel included in his disclosure to the prosecution prior to trial that the defense intended to assert the defenses of innocence, that defendant had legal custody at the time of the violation, and that defendant was fleeing an incidence or pattern of domestic violence. However, defendant's primary defense at trial was that she did not intentionally violate the court's order. Defense counsel briefly touched on the legal custody issue during his closing argument.

■ Defendant has not raised on appeal the issue of her legal custody at the time of the violation. While the general rule is that a reviewing court should not normally search the record for unargued and unbriefed reasons to reverse the trial court judgment, a

reviewing court need not ignore grave errors of law which the parties on appeal either overlook or decline to address. (*In re Marriage of Plymale* (1988), 172 Ill. App. 3d 455, 460.) The record demonstrates that defendant had sole legal custody of the children at the time of the offense. The State could not have contradicted this affirmative defense if defense counsel had raised this issue in the trial court. Since there is no evidence rebutting defendant's affirmative defense, we reverse defendant's conviction for child abduction.

Defendant's appellate brief challenges only that portion of the trial court's order that directed her to turn custody of the children over to her ex-husband. The provision under which defendant was convicted states that "[a] person commits child abduction when he or she *** [i]ntentionally violates a court order prohibiting the person from *** removing the child from the jurisdiction of the court." (Ill. Rev. Stat. 1989, ch. 38, par. 10—5(b)(2) (now 720 ILCS 5/10—5(b)(2) (West 1992)).) Section 10—5(e) states that the "court may order the child to be returned to the parent or lawful custodian from whom the child was concealed, detained or removed." (Ill. Rev. Stat. 1989, ch. 38, par. 10—5(e) (now 720 ILCS 5/10—5(e) (West 1992)).) Defendant claims that this provision does not give a trial court the power to transfer custody to a parent who never before had legal custody of the children who were removed from the court's jurisdiction.

We note initially that it is unclear who had legal custody of the children at the time of the sentencing hearing. The circuit court in the civil case relinquished jurisdiction over the custody dispute to the Louisiana courts. (*In re Marriage of Rizza*, 237 Ill. App. 3d at 84.) The record in this case contains little evidence of the status of the Louisiana proceedings at the time the court imposed its sentence.

The trial court has the power to return the children to "the parent or lawful custodian" from whom the children were removed. The issue presented is one of statutory interpretation, and a court's duty in that regard is to ascertain and give effect to the legislature's intent. (*People v. Garrett* (1990), 136 Ill. 2d 318, 329.) Any inquiry into legislative intent must begin with the language of the statute. (*People v. Lowe* (1992), 153 Ill. 2d 195, 201.) The statute defines "[l]awful custodian" as the "person or persons granted legal custody of a child or entitled to physical possession of a child pursuant to a court order." Ill. Rev. Stat. 1989, ch. 38, par. 10—5(a)(3) (now 720 ILCS 5/10—5(a)(3) (West 1992)).

Defendant substantially interfered with James' visitation rights by removing the children from Illinois. The State contends that section 10—5(e) gave the trial court the power to order defendant to turn custody of the children over to James. In its written judgment

order dated March 6, 1992, the trial court referred to James as the children's "lawful custodian." Since we have determined that James was not the lawful custodian at the time of the violation, the issue to be determined is whether the trial court had the authority to order the custody of the children to be with James when defendant still had sole custody pursuant to the 1987 judgment of dissolution.

■ We note that defendant moved the children to Louisiana in May 1989. The record is clear that defendant had legal custody of the children on August 16, 1989, when the trial court entered the order which defendant allegedly violated. Section 10—5(c)(1) reads: "It shall be an affirmative defense that *** [t]he person had custody of the child pursuant to a court order granting legal custody *** which existed at the time of the alleged violation." Ill. Rev. Stat. 1989, ch. 38, par. 10—5(c)(1) (now 720 ILCS 5/10—5(c)(1) (West 1992)).

Defendant's counsel stated in his closing argument that he filed an affirmative defense stating that defendant had a valid custody order at the time of the alleged offense. Defense counsel argued that this switched the burden to the State to prove that this court order was invalidated by the next court order entered on October 23, 1989, giving James temporary custody. Defendant contends that the October 23 order is void under the provisions of section 610(a), which states:

> "(a) Unless by stipulation of the parties, no motion to modify a custody judgment may be made earlier than 2 years after its date, unless the court permits it to be made on the basis of affidavits that there is reason to believe the child's present environment may endanger seriously his physical, mental, moral or emotional health." (Ill. Rev. Stat. 1991, ch. 40, par. 610(a) (now 750 ILCS 5/610(a)(West 1992)).)

Defendant contends that the trial court's order of October 23, 1989, awarding temporary custody to James, was entered less than two years after the original judgment of December 23, 1987, which awarded sole custody of the children to defendant. A court may modify a custody judgment less than two years after the date of entry only in emergency situations where the child's present environment endangers his physical, mental, moral, or emotional health (Ill. Rev. Stat. 1991, ch. 40, par. 610(a) (now 750 ILCS 5/610(a) (West 1992))), and where subsection (b)'s requirements are also met: (1) that a petitioner prove that a change of circumstances of the child or custodian has occurred, (2) that a petitioner prove that the modification is necessary for the child's best interest, and (3) that the trial court make specific findings on these facts (Ill. Rev. Stat. 1991, ch. 40, par. 610(b) (now 750 ILCS 5/610(b) (West 1992))). (*In re Custody*

*of Carter* (1985), 137 Ill. App. 3d 439, 442.) The record here indicates that the trial court made its determination based on information that defendant was in Louisiana with the children and on the submission of an affidavit at the hearing on October 23, 1989:

> "THE COURT: Prepare an order changing temporary custody to James. And give me a writ of attachment and abating child support until further order of court.
>
> MR. CERNE (James' counsel): Should we file affidavits for the custody or is that necessary at this time?
>
> THE COURT: What's your affidavit say?
>
> MR. CERNE: Just says that the child's current environment is not good for the emotional—
>
> THE COURT: They've been removed from the state without permission of court.
>
> MR. CERNE: Yeah.
>
> THE COURT: Yeah; give me that affidavit."

Defendant claims there was no stipulation to a change of custody between the parties nor were there affidavits presented indicating a reason to believe there was a serious endangerment to the children as required under section 610(a). Defendant also maintains that the trial court failed to consider the best interest of the children under section 610(b) before ordering a temporary change in custody to James. Thus, defendant argues that the October 23 order was void and the only valid custody order at the time of sentencing was the original December 23, 1987, order granting defendant custody. We agree that the trial court's analysis on the change of custody order was insufficient and did not meet the required standards of sections 610(a) and (b). (Ill. Rev. Stat. 1991, ch. 40, pars. 610(a), (b) (now 750 ILCS 5/610(a), (b) (West 1992)).) In addition, defendant's removal of the children by itself is an insufficient basis on which to alter a custody decision. (*Rizza*, 237 Ill. App. 3d at 89.) The court's failure to expressly make the required findings renders its judgment void. *Carter*, 137 Ill. App. 3d at 443.

As this court noted in *Rizza*, defendant's custody of the children at the time of her departure is unquestioned:

> "Although we condemn in no uncertain terms Joyce's conduct in removing the parties' children from the State in violation of the circuit court's order, she had custody of the children at that time. Therefore, she did not unilaterally remove the children from Illinois for the purpose of obtaining custody." *Rizza*, 237 Ill. App. 3d at 89.

Since the only valid custody order in this case was that contained in the judgment of dissolution giving sole custody to defendant, we believe the trial court abused its discretion in ordering temporary

custody to be with James. Section 10—5(e) provides for the trial judge to "return" the children to the parent or lawful custodian but does not provide for a change in custody. Section 10—5(e) states that the court "may order the child to be returned to the parent or lawful custodian from whom the child was *** removed." (Ill. Rev. Stat. 1989, ch. 38, par. 10—5(e) (now 720 ILCS 5/10—5(e) (West 1992)).) James was a "parent" within the meaning of this provision; however, defendant had sole custody and was thus the lawful custodian. We believe that "returning" the children to James would involve at most restoring his visitation rights. The trial court's order in this case in essence effected a change of custody which we believe was in contravention to the legislative intent.

In seeking to ascertain legislative intent, courts should consider the statute at issue in its entirety, noting the subject it addresses and the legislature's apparent objective in enacting it. (*State v. Mikusch* (1990), 138 Ill. 2d 242, 247.) Our supreme court has articulated the apparent purpose behind the child abduction statute:

> "By enacting the child abduction statute, the State legislature sought to protect the welfare of children involved in custody disputes by encouraging compliance with court orders of custody, thus helping to establish a stable environment for the children. The statute also seeks to protect the rights of the custodial parent under the decree." *People v. Caruso* (1987), 119 Ill. 2d 376, 386.

The statute was primarily intended to prevent disgruntled parents who were unsuccessful in their attempts to obtain custody through legal channels from seeking self-help by spiriting the children away to another jurisdiction in violation of a custody order. This purpose is made apparent by section 10—5(c), which effectively immunizes the custodial parent from prosecution for child abduction. In light of the apparent purpose of the child abduction statute and the affirmative defense provided in section 10—5(c), we hold that section 10—5(e) was not intended to be used as a tool for effecting a change in custody but rather as a means of reestablishing the status quo by giving the court the power to "return" the children to their lawful custodian.

Upholding the trial court's order would also contravene the well-established principle that merely removing the children from the jurisdiction of the court is not in and of itself sufficient grounds for a change of custody. (*Rizza*, 237 Ill. App. 3d at 89.) The trial court in this criminal case allowed James to obtain custody of the children solely on the basis of defendant's removing the children from Illinois, something James could not do in the civil case.

Accordingly, we reverse both the defendant's conviction on child

abduction charges and the trial court's order directing defendant to turn custody of the children over to James. We believe the custody of the children should be properly governed by the outcome of the civil custody proceeding.

Reversed.

McLAREN and BOWMAN, JJ., concur.