THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. SARAH K. NESTROCK, Defendant-Appellant.

Second District   No. 2—98—0341

Opinion filed July 15, 1999.—Rehearing denied August 13, 1999.

John F. Donahue, of Law Offices of Donahue, Sowa & Bugos, of Lisle, for appellant.

Joseph E. Birkett, State's Attorney, of Wheaton (Martin P. Moltz and Mary Beth Burns, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

PRESIDING JUSTICE BOWMAN delivered the opinion of the court:

Defendant, Sarah K. Nestrock, was convicted of reckless homicide (720 ILCS 5/9—3(a) (West 1996)) and subsequently sentenced to concurrent sentences of two years' imprisonment. Nestrock appeals her conviction, contending that she was denied a fair trial because (1) the State made several references to defendant's membership in a social group for gay students, intending to prejudice her in the eyes of

the jury; (2) the trial court allowed the State's accident reconstruction expert to offer the opinion that defendant was conscious while driving her vehicle; (3) the trial court denied defendant's motion to suppress a tape-recorded conversation between defendant and one of her friends without conducting an evidentiary hearing; (4) the trial court did not allow defendant to offer as substantive evidence a statement that she made to an investigating police officer shortly after the accident; and (5) defendant did not receive the effective assistance of counsel. We reverse and remand.

Following a car accident that caused the deaths of Stephen Cornelius and his eight-year-old son, Zachery, defendant was charged with reckless homicide and aggravated driving while under the influence of drugs (625 ILCS 5/11—501(d)(1)(C) (West 1996)). Before trial, the State nol-prossed the charges that were based on driving under the influence of drugs.

The evidence at trial revealed that the accident in question took place on September 25, 1996, at the intersection of 79th Street and Clarendon Hills Road in Willowbrook. Defendant, who was driving a 1995 Ford Escort station wagon, was traveling south on Clarendon Hills Road when her car left the road and entered the ditch on the west side of the road. Defendant's car traveled through the ditch for approximately 300 feet, exited the ditch, traveled another 70 feet, and then ran into the driver's side of the Cornelius vehicle, a 1992 Pontiac Bonneville, which was stopped on 79th Street at a stop sign. Stephen Cornelius was driving the Bonneville, and his son, Zachery, was seated directly behind him. Barbara Hall, Stephen's wife and Zachery's mother, was also in the car at the time of the collision, as was the couple's 10-year-old daughter, Jane, who was seriously injured. The State's accident reconstruction expert opined that defendant's car was traveling 42 miles per hour at the time of impact. Defendant's accident reconstruction expert opined that her speed at impact was 31 miles per hour.

At trial, the State presented the theory that defendant purposely drove her car into and through the ditch in an attempt to either kill herself or feign suicide to attract the attention of her family and friends. Defendant testified that she was not trying to commit suicide. She stated that she remembered turning on her right turn signal and the next thing she remembered was being stopped next to a telephone pole.

In addition to other evidence that defendant was contemplating suicide, the State presented a tape-recorded conversation between defendant and Nagayo "Nick" Heath, a close friend of defendant's at the time of the accident. The recorded conversation took place on the evening of September 26, 1996, the day after the accident.

Heath testified that on the morning of September 26, 1996, he received a phone call from defendant, who said that she had hit a tree and was in the hospital. Later that day, defendant called Heath and another friend, Jason Taylor, at the home of Beth Johnson. Heath talked to defendant, who told him that she had killed two people. Heath testified that defendant said that "[s]ubliminally [she] pulled a Justin." This was a reference to another friend of defendant's, Justin Krause. Heath testified that on September 23, 1996, defendant told him that Krause had tried to kill himself by driving his car into a tree.

From Beth Johnson's house, Heath then went to work, where he received a message from the Willowbrook police department. Heath spoke with Officer Andy Pellicioni and arranged to meet him the following day or the day after. From work, Heath went to Jason Taylor's house. Defendant called Taylor's house that night at 8 or 9 p.m. Heath spoke with defendant and asked her if she meant to commit suicide. Defendant did not respond. Taylor and Heath decided to tape-record their next conversation with defendant because they had been contacted by the police and wanted to protect themselves.

Defendant paged Jason Taylor at about 10 p.m., and Taylor called her back. While Heath was talking to defendant, Taylor, who was listening on another extension, recorded the conversation. Defendant did not know that Taylor was recording the conversation. The record submitted to this court does not include the tape recording or a transcript of the tape recording. Certain portions of the tape, however, are quoted in the report of proceedings. These portions indicate that, during their conversation, Heath asked defendant, "Did you or did you not wish to end your life?" Defendant replied "yes." Heath then said, "Okay. That's a starting stone, it's somewhere for me to go from here. Now, we established why because of your family life, you know, and your new found friend, illness, what have you." Defendant again responded "yes."

Before trial, defendant brought a motion to suppress her recorded conversation with Heath. She argued that the language of the Illinois eavesdropping statute (720 ILCS 5/14—1 et seq. (West 1996)) barred the admission of the tape and that the investigating police officers had arranged and directed the tape recording without giving her any warning. The trial court ruled that Heath did not violate the statute by recording his own conversation with defendant and that this would be true even if the police department had instigated the recording.

In her posttrial motion, defendant asserted that it was error for the trial court to deny her motion to suppress without conducting an evidentiary hearing to establish whether the investigating police officers were involved in the recording. Defendant did not request an evi-

dentiary hearing during trial. During the hearing on the posttrial motion, the trial court asked counsel for the defendant if he had any evidence that the Willowbrook police department instigated or arranged the tape recording. Defense counsel admitted that he had no such evidence. In ruling on the posttrial motion, the trial court noted that the evidence indicated that Heath recorded his conversation with defendant entirely of his own volition. The trial court further stated that suppression was not available to defendant under such a circumstance.

■ We first consider defendant's argument that the trial court erred by denying the motion to suppress without holding an evidentiary hearing to determine whether the Willowbrook police department instigated or arranged the recorded conversation. We note initially that, because defendant did not request an evidentiary hearing before or during trial, this issue is waived for the purposes of our review. *People v. Enoch*, 122 Ill. 2d 176, 186-87 (1988). This issue does not merit consideration under the plain error doctrine because there was no error and defendant has not shown that the failure to conduct an evidentiary hearing contributed to her conviction (see *People v. Sullivan*, 72 Ill. 2d 36, 44 (1978)).

At trial, Nick Heath, Jason Taylor, and Officer Pellicioni all testified that the police did not suggest, request, or otherwise arrange the recording. During the hearing on the posttrial motion, defendant conceded that she had no evidence to support her theory that the investigating officers were involved with the recording. We find this case analogous to *People v. Govin*, 213 Ill. App. 3d 928, 935-36 (1991). In *Govin*, the court considered whether it was error for the trial court to deny the defendant an evidentiary hearing on his motion to suppress tapes of a wiretap. *Govin*, 213 Ill. App. 3d at 935-36. The court held that the trial court correctly denied the request for an evidentiary hearing because the defendant did not specify which portions of the affidavit supporting the wiretap request were false and did not offer any evidence to support his claim that the affidavit contained false statements. *Govin*, 213 Ill. App. 3d at 935-36. In the present case, defendant presented no evidence to support her theory of police involvement; thus, there was no reason for an evidentiary hearing and no harm to defendant.

■ We must disagree, however, with the trial court's denial of defendant's motion to suppress. We find that the plain language of the Illinois eavesdropping statute bars the admission of the recording and that it was reversible error for the trial court to admit the recording into evidence. Although defendant failed to raise this issue in her appeal, we consider it because it involves, in our view, a grave error of

law. As we stated in *People v. Olsewski*, 257 Ill. App. 3d 1018 (1994), "[w]hile the general rule is that a reviewing court should not normally search the record for unargued and unbriefed reasons to reverse the trial court judgment, a reviewing court need not ignore grave errors of law which the parties on appeal either overlook or decline to address." *Olsewski*, 257 Ill. App. 3d at 1021-22; see also *People v. Cortes*, 181 Ill. 2d 249, 282 (1998).

■ The eavesdropping statute provides that a person commits eavesdropping when he:

"[u]ses an eavesdropping device to hear or record all or any part of any conversation unless he does so (1) with the consent of all of the parties to such conversation[.]" 720 ILCS 5/14—2(a) (West 1996).

Effective December 15, 1994, section 14—1(d) of the eavesdropping statute defined "conversation" as "any oral communication between 2 or more persons regardless of whether one or more of the parties intended their communication to be of a private nature under circumstances justifying that expectation." 720 ILCS 5/14—1(d) (West 1996). Section 14—5 provides that any evidence obtained in violation of the statute is inadmissible in any civil or criminal trial, with the sole exception of trials for a person charged with violating the eavesdropping statute. 720 ILCS 5/14—5 (West 1996).

■ In denying defendant's motion to suppress, the trial court relied on our supreme court's interpretation of the eavesdropping statute in *People v. Beardsley*, 115 Ill. 2d 47 (1986), and *People v. Herrington*, 163 Ill. 2d 507 (1994). In *Beardsley*, the supreme court held that the primary factor in determining whether eavesdropping has occurred is whether the nonconsenting participants "intended their conversation to be of a private nature under circumstances justifying such expectation." *Beardsley*, 115 Ill. 2d at 54. Relying on *Lopez v. United States*, 373 U.S. 427, 10 L. Ed. 2d 462, 83 S. Ct. 1381 (1963), the court further held that the eavesdropping statute should not prohibit a party to a conversation from recording that conversation. *Beardsley*, 115 Ill. 2d at 56. Likewise, in *Herrington*, the supreme court held that "there can be no expectation of privacy by the declarant where the individual recording the conversation is a party to that conversation." *Herrington*, 163 Ill. 2d at 510, citing *Beardsley*, 115 Ill. 2d at 56.

However, by adding the definition of "conversation" to the statute in 1994, the Illinois legislature "extended the coverage of the eavesdropping statute to all conversations, regardless of whether they were intended to be private" (*People v. Siwek*, 284 Ill. App. 3d 7, 14 (1996)). See also *In re Marriage of Almquist*, 299 Ill. App. 3d 732, 736-37 (1998) (holding that the amended statute "prohibits the recording of any

conversation without the consent of all parties regardless of any party's expectation of privacy"). The State cites *People v. Rodriguez*, 289 Ill. App. 3d 223 (1997), as authority for the proposition that the recording of a conversation by one of the parties to the conversation is not prohibited. *Rodriguez* is distinguishable from the present case because the conversation in question in *Rodriguez* was recorded in July 1994, prior to the effective date of the amendment that defined "conversation."

■ The amended statute was in effect at all times relevant to the present case. Based on the plain language of the statute and the fact that the conversation was recorded without defendant's consent, we cannot ignore the trial court's grave error of law in admitting the tape recording.

From those portions of the tape quoted in the report of proceedings, we conclude that the admission of the tape prejudiced defendant and was not harmless error. The jury could have regarded defendant's admission that she meant to end her life as the equivalent of a confession that she acted in conscious disregard of a substantial and justifiable risk to the safety of others, which was the most strongly contested issue in the case. Although the State presented other evidence suggesting that defendant was contemplating suicide, we cannot say that the jury would have convicted defendant if the tape had not been admitted. We further find, after reviewing the record, that there was sufficient evidence for the jury to determine that defendant was guilty beyond a reasonable doubt. Therefore, the State may proceed with a new trial against defendant without subjecting her to double jeopardy. See *People v. Taylor*, 76 Ill. 2d 289, 309-10 (1979). In so holding, we in no way imply that we have made a finding as to defendant's guilt or innocence that is binding on retrial. See *People v. Taylor*, 76 Ill. 2d at 310.

We next consider defendant's arguments that the trial court erred by (1) allowing the State to make references to defendant's membership in Cornerstones, an organization for gay students; (2) allowing the State's reconstruction expert to offer the opinion that defendant consciously drove through the ditch; and (3) barring defendant from offering as substantive evidence a statement she made to Officer Handzik following the accident. Preliminarily, we note that defendant did not object at trial to the State's references to Cornerstones or to the allegedly improper expert testimony. Nonetheless, we will consider these issues, along with the hearsay issue, in the interest of judicial economy, because they will likely arise during the new trial.

■ Defendant claims that she was prejudiced by the State's references, both in opening argument and examination of several witnesses,

to her membership in Cornerstones, an organization for gay students at the College of Du Page. Improper remarks by a prosecutor do not warrant reversal unless they were so prejudicial that they were a material factor in convicting the defendant. *People v. Falconer*, 282 Ill. App. 3d 785, 789 (1996). The standard of review in making this determination is similar to the plain error analysis. *People v. Henderson*, 142 Ill. 2d 258, 323 (1990).

In the present case, we find that the prosecutor's remarks were not improper and, consequently, they were not prejudicial. Two of the State's own witnesses belonged to Cornerstones, and the evidence indicated that defendant met these witnesses through Cornerstones. Defendant also testified that she was on her way home from a Cornerstones meeting when the accident happened. Clearly, there were reasons for the State to mention Cornerstones. The trial court, which was in the best position to determine whether the remarks were improper and prejudicial, found that the tone of the trial was not inflammatory and not prejudicial to defendant. Based on our review of the record, we agree with the trial court and conclude that the State's references to defendant's membership in Cornerstones did not deny her a fair trial.

■ Defendant next asserts that the trial court improperly allowed the State's accident reconstruction expert, Jimmy Lee, to offer the opinion that defendant consciously drove through the ditch. Defendant claims that Lee's opinion was speculative. The admission of expert testimony is within the trial court's discretion, which we will not disturb absent an abuse of discretion. *People v. Miles*, 217 Ill. App. 3d 393, 403 (1991).

We begin by noting that we find no testimony in the record from Lee that defendant was a "conscious" driver at the time of the collision. Lee did offer the following testimony:

"Q. Sir, in addition to that, did you analyze or determine what, if any, sort of steering input was used on the Ford Escort prior to it hitting the Pontiac Bonneville?

A. Yes.

Q. And what are we talking about when we talk about steering input?

A. An input is the driver's action; turns left, turns right or maintains.

Q. This is an action that a conscious driver would do?

A. Yes.

Q. Were you able to determine if there were any steering input prior to the Escort hitting the Bonneville?

A. Yes.

Q. How many steering inputs were you able to find or determine?

A. There's at least three significant inputs. The act of driving is not one input here, one input there, it's maintaining. So in my opinion the steering was maintained throughout the course of this path."

It appears to us that, when answering whether a steering input is something that a "conscious" driver would do, Lee was explaining the term "steering input," not giving an opinion about defendant's mental state at the time of the accident. Furthermore, we agree with the trial court that Lee's opinion that defendant made at least three steering inputs while driving through the ditch was based on his review of the physical evidence and reconstruction of the events leading up to the collision. It was not error to allow this testimony.

■ Last, we address defendant's argument that the trial court erroneously barred her from offering her statement to Officer Handzik as substantive evidence. According to the record, Officer Handzik was the first police officer who arrived at the scene of the collision and was the first person defendant spoke to after the accident. Officer Handzik testified that his conversation with defendant took place approximately 10 to 15 minutes after he arrived on the scene. Officer Handzik further testified that defendant told him that she intended to turn right from Clarendon Hills Road onto 79th Street and that she remembered activating her turn signal but was not aware of what happened until her car came to rest. Before Officer Handzik gave this testimony, the trial court instructed the jury that his testimony about defendant's statement was being elicited only to demonstrate that the statement was made and not for the truth of the statement.

Defendant argues that the statement was an excited utterance and therefore should have been admitted as substantive evidence. We will apply an abuse of discretion standard to this issue, not a *de novo* standard as defendant urges. A reviewing court may review *de novo* a trial court's decision that a statement is hearsay when the determination does not involve fact-finding or weighing the credibility of the witnesses. *People v. Aguilar*, 265 Ill. App. 3d 105, 109 (1994). In the present case, however, the trial court's determination of whether defendant's statement fell under the excited utterance exception involved fact-finding and assessing the credibility of the witnesses. To qualify as an excited utterance, the proponent of the evidence must demonstrate "(1) the occurrence of an event or condition sufficiently startling to produce a spontaneous and unreflecting statement; (2) absence of time to fabricate; and (3) a statement relating to the circumstances of the occurrence." *People v. Smith*, 152 Ill. 2d 229, 258 (1992). In the case before us, the trial court ruled that defendant did

not establish that her statement was an excited utterance because she did not show a lack of opportunity to reflect and fabricate. Under the facts presented, the trial court did not abuse its discretion. Any future ruling on this issue will likewise depend on the facts presented on retrial.

Defendant also argues that she was denied a fair trial due to ineffective assistance of counsel. In light of our determination to reverse defendant's conviction and remand this cause, we need not consider this argument.

For the reasons stated, we reverse defendant's conviction and remand this cause to the circuit court of Du Page County for a new trial.

Reversed and remanded.

INGLIS and HUTCHINSON, JJ., concur.