*In re* MARRIAGE OF DEBORAH ALMQUIST, Petitioner-Appellant, and FRANK ALMQUIST, Respondent-Appellee.

Third District   No. 3—97—0811

Opinion filed August 26, 1998.—Modified on denial of rehearing November 16, 1998.

John R. Wimmer, of Downers Grove, for appellant.

John F. Argoudelis, of Schenk, Duffy, Quinn, McNamara, Phelan, Carey & Ford, of Joliet, for appellee.

JUSTICE BRESLIN delivered the opinion of the court:

Respondent, Frank Almquist, filed a petition for adjudication of indirect criminal contempt alleging that the petitioner, Deborah Almquist, failed to comply with the trial court's order granting him limited telephone visitation with their only child, H.A. The court granted the petition and sentenced Deborah to two years of court supervision. Because we hold that the playing of an audio tape in the background during a telephone conversation does not constitute a "conversation" as defined in the Illinois eavesdropping statute (720 ILCS 5/14—1 *et seq.* (West 1996)), we affirm.

## FACTS

Frank and Deborah Almquist were married in 1989. Their daughter, H.A., was born in 1991. In 1996, Deborah filed a petition for dissolution of marriage. The trial court granted temporary custody of H.A. to Deborah. Subsequently, Frank requested and received telephone visitation with H.A. The order gave Frank the right to telephone visitation with H.A. every Monday, Wednesday and Thursday evening.

On May 27, 1997, Frank filed a petition for adjudication of indirect criminal contempt alleging Deborah failed to comply with the court order concerning telephone visitation. At the hearing on the petition, Frank testified he called Deborah's home at 8 p.m. on Monday, May 12, 1997, but was never allowed to speak with H.A. Instead, Deborah attempted to engage Frank in argument. Frank testified he did not argue with Deborah, but continued to ask to speak to H.A.

Frank testified he called H.A. on May 15, 1997. During their conversation, a recording was played at high volume in the background. Frank recognized the recording as his "suicide tape." He explained that the tape was a recording of his own voice he had made approximately 1½ years earlier.

Frank testified that, with the aid of his answering machine, he recorded the May 15 telephone call to his daughter as well as all of the other calls that are the subject of this hearing. The trial court admitted the audiotape of the telephone call into evidence. On the tape a phone can be heard ringing. When the receiver is picked up, no one

speaks into the phone, but Frank's "suicide tape" can be heard playing in the background. Frank and H.A. then have a short conversation while the "suicide tape" continues to play in the background.

Frank testified he called H.A. four days later. This time only the "suicide tape" was audible on the other end of the line. Frank repeatedly asked to speak to H.A., but was never able to speak with her. After a short time, Frank hung up while the "suicide tape" continued to run.

Deborah testified that, at the times appointed for Frank's telephone visitation, she usually waits for caller ID to indicate the number before instructing H.A. to answer the call. Deborah stated she then leaves the room. Deborah testified that, to the best of her knowledge, Frank was able to speak with H.A. on all of the dates in question. Deborah denied playing the "suicide tape" in the background during Frank's telephone visitation. Deborah testified H.A. often plays tapes on Deborah's tape player, but that H.A. does not have access to her copy of the "suicide tape." Deborah testified that no one lives at the residence besides H.A. and herself.

The trial court found Deborah guilty of indirect criminal contempt for failure to provide telephone visitation on May 12, 15 and 19. The court denied Deborah's motion for new trial.

## ANALYSIS

■ Initially we note that Frank, the appellee, has not filed a brief in this case. However, we find that the record and appellant's brief are sufficient to allow us to address the merits of this appeal without the benefit of an appellee's brief. See *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 345 N.E.2d 493 (1976).

## I. Admission of the Audiotape

On appeal, Deborah contends the trial court erred in admitting Frank's tape of his telephone visitation with H.A. because it was recorded in violation of the Illinois eavesdropping statute (720 ILCS 5/14—1 et seq. (West 1996)).

■ Generally, a reviewing court will not disturb a trial court's ruling on the admissibility of evidence absent an abuse of discretion. *People v. Enis*, 139 Ill. 2d 264, 564 N.E.2d 1155 (1990). However, a matter of statutory construction is a question of law subject to *de novo* review. *Village of South Elgin v. City of Elgin*, 203 Ill. App. 3d 364, 561 N.E.2d 295 (1990). Here, the admissibility of Frank's tape depends upon a judicial construction of the eavesdropping statute and an application of the statute so construed. Thus, the matter before this court is a question of law, which we will review *de novo*. *Bender v. Board of Fire & Police Commissioners*, 183 Ill. App. 3d 562, 539 N.E.2d 234 (1989).

■ The Illinois eavesdropping statute provides in relevant part that "[a] person commits eavesdropping when he *** [u]ses an eavesdropping device to hear or record all or any part of any conversation unless he does so *** with the consent of all of the parties to such conversation." 720 ILCS 5/14—2(a)(1) (West 1996). Any evidence obtained in violation of the eavesdropping statute "is not admissible in any civil or criminal trial." 720 ILCS 5/14—5 (West 1996).

■ In denying Deborah's motion for a new trial, the trial court ruled that Frank's tape was admissible because it fell within the exemption to the eavesdropping statute provided at section 14—3(i). 720 ILCS 5/14—3(i) (West 1996). That section exempts from the statute the "[r]ecording of a conversation made by or at the request of a person *** who is a party to the conversation, under reasonable suspicion that *another party to the conversation* is committing, is about to commit, or has committed a criminal offense against the person ***." (Emphasis added.) 720 ILCS 5/14—3(i) (West 1996). Frank's daughter, H.A., was the only other party to the conversation on the tapes. Because Frank had no reasonable basis to suspect that his six-year-old daughter was likely to commit a crime during his telephone visitation with her we hold that this exemption does not apply to this case.

Next we must consider whether the tape is admissible on any other ground. See *People v. Paarlberg*, 243 Ill. App. 3d 731, 612 N.E.2d 106 (1993) (issue on appeal is the trial court's judgment, not the rationale for its judgment). Specifically, we address whether Frank's tape, or any portion of it, is a recording of a "conversation" within the meaning of the eavesdropping statute.

■■ In 1986 our supreme court held that there is no violation of the eavesdropping statute when an individual records statements made to him without the knowledge or consent of the person making the statements because the declarant has no expectation of privacy concerning those statements. *People v. Beardsley*, 115 Ill. 2d 47, 503 N.E.2d 346 (1986); *People v. Herrington*, 163 Ill. 2d 507, 645 N.E.2d 957 (1994). Subsequently, the General Assembly added the definition of "conversation" to the eavesdropping statute. Pub. Act 88—677, eff. December 15, 1994 (adding 720 ILCS 5/14—1(d) (West 1996)). The statute defines "conversation" as "any oral communication between 2 or more persons regardless of whether one or more of the parties intended their communication to be of a private nature under circumstances justifying that expectation." 720 ILCS 5/14—1(d) (West 1996). Thus, the amended statute prohibits the recording of any conversation without the consent of all parties regardless of any party's expectation of privacy. When Frank and H.A. spoke on the telephone they were

clearly engaging in a conversation covered by the statute. Therefore, we hold that the trial court erred in admitting this portion of the recording.

However, the allowance of inadmissible evidence is harmless error if properly admitted evidence was sufficient to prove each element of the crime beyond a reasonable doubt. *People v. Lee*, 162 Ill. App. 3d 972, 516 N.E.2d 360 (1987). With this in mind, we turn to the question of whether the remainder of the tape was admissible.

In playing the "suicide tape," Deborah was undoubtedly expressing her disdain for Frank and she was certainly seeking to disrupt the telephone visitation. Her efforts, however, did not constitute participation in a "conversation" in any ordinary sense of that term. Rather, she was engaging in criminal conduct aimed at frustrating Frank's telephone visitation.

We are mindful that a statute that defines the very terms it uses should be construed according to those definitions. *Garza v. Navistar International Transportation Corp.*, 172 Ill. 2d 373, 666 N.E.2d 1198 (1996). However, the addition of a definition of "conversation" to the eavesdropping statute was an effort narrowly tailored to the goal of removing any expectation of privacy element from the crime of eavesdropping. See 88th Ill. Gen. Assem., Senate Proceedings, April 21, 1994, at 139 (statement of Senator Dillard), and May 20, 1994, at 42 (statement of Senator Dudycz). It was not the legislature's intent to provide a definition of "conversation" so broad as to encompass any audible expression whatsoever. Accordingly, we hold that Deborah was not participating in a "conversation" within the meaning of the eavesdropping statute when she played a recording of Frank's voice for the purpose of interfering with his telephone visitation. Therefore, because the eavesdropping statute prohibits only the recording of conversations, the trial court committed no error in admitting that portion of Frank's tape which recorded the "suicide tape."

But Deborah contends that the "sounds in the background" of Frank's conversation with H.A. are inadmissible because they are the fruit of Frank's illegal recording of his conversation with his daughter.

Section 14—5 of the eavesdropping statute provides that "[a]ny evidence obtained in violation of this Article is not admissible in any civil or criminal trial." 720 ILCS 5/14—5 (West 1996). Illinois courts have interpreted this provision to be the legislature's express adoption of the "fruit of the poisonous tree" doctrine. *People v. Maslowsky*, 34 Ill. 2d 456, 216 N.E.2d 669 (1966). Under the "fruit of the poisonous tree" doctrine, an unlawful search taints not only the evidence obtained from the search, but also evidence derivative of the search. *Wong Sun v. United States*, 371 U.S. 471, 9 L. Ed. 2d 441, 83 S. Ct. 407 (1963).

The case at bar does not present a "fruit of the poisonous tree" problem. Although recorded on the same tape, and in one instance simultaneously, the evidence of Deborah's interference with Frank's telephone visitation is not derivative of Frank's conversation with H.A. The May 19 episode is particularly illustrative of this point. On that date, Frank recorded a telephone call but never engaged in a conversation with anyone. Nevertheless, on that occasion Deborah interfered with Frank's telephone visitation by playing the "suicide tape." As the peculiar facts of this case demonstrate, the broad remedial purpose and coverage of the eavesdropping statute prohibit the recording of conversations without the consent of all parties thereto, but not the recording of a mere telephone connection.

## II. Sufficiency of the Evidence

Deborah also contends that the evidence presented at trial was insufficient to find her guilty of indirect criminal contempt.

■ To sustain a finding of indirect criminal contempt for the violation of a court order outside the presence of the court, two elements must be proved: (1) the existence of a court order; and (2) a willful violation of that order. *People v. Totten*, 118 Ill. 2d 124, 514 N.E.2d 959 (1987). Each of these elements must be proved beyond a reasonable doubt. *People v. Minor*, 162 Ill. App. 3d 140, 514 N.E.2d 1042 (1987). A reviewing court will not disturb a trial court's finding of indirect criminal contempt if, after viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the elements of the crime beyond a reasonable doubt. *People v. Townsend*, 183 Ill. App. 3d 268, 538 N.E.2d 1297 (1989).

■ Frank's testimony and the admissible portions of Frank's tape established that the "suicide tape" was played while Frank attempted to exercise his right to telephone visitation. In addition, Deborah testified H.A. did not have access to Deborah's copy of the "suicide tape." From these facts, the trial court could have rationally concluded that it was Deborah who played the "suicide tape" at the times in question.

However, Deborah maintains that, even if proved, her conduct did not violate the express terms of the trial court's order. If we were to accept Deborah's strict construction of the order, she would have been in compliance with it anytime a-connection was made when Frank called for visitation. We disagree. It is clear that a reasonable person would understand that implicit in the trial court's order was a requirement that Frank be permitted telephone visitation free of obnoxious interference by Deborah. Therefore, we hold that the evidence properly admitted against Deborah was sufficient for a rational trier of fact to

find Deborah guilty of indirect criminal contempt beyond a reasonable doubt.

For the foregoing reasons, the judgment of the circuit court of Will County is affirmed.

Affirmed.

HOMER, P.J., and LYTTON, J., concur.