THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. SARAH K. NESTROCK, Defendant-Appellant.

Second District   No. 2—98—0341

Opinion filed September 8, 2000.

John F. Donahue, of Law Offices of Donahue, Sowa & Bugos, of Lisle, for appellant.

Joseph E. Birkett, State's Attorney, of Wheaton (Martin P. Moltz and Marshall M. Stevens, both of State's Attorney Appellate Prosecutor's Office, and Mary Beth Burns, Assistant Attorney General, of counsel), for the People.

PRESIDING JUSTICE BOWMAN delivered the opinion of the court:

Defendant, Sarah K. Nestrock, was convicted of reckless homicide (720 ILCS 5/9—3(a) (West 1996)) and subsequently sentenced to concurrent sentences of two years' imprisonment.

This court reversed defendant's conviction in *People v. Nestrock*, 306 Ill. App. 3d 216 (1999). Our supreme court denied the State's petition for leave to appeal but, under its supervisory authority, directed this court to vacate our opinion and ordered that we reconsider the appeal after allowing the parties to submit briefs on the issue of whether the Illinois eavesdropping statute requires the reversal of defendant's conviction and a remand for a new trial.

In addition to the eavesdropping issue, defendant contends she was denied a fair trial because (1) the State made several references to her membership in a social group for gay students, intending to prejudice her in the eyes of the jury; (2) the trial court allowed the State's accident reconstruction expert to offer the opinion that defendant was conscious while driving her vehicle; (3) the trial court denied defendant's motion to suppress the tape-recorded conversation between defendant and one of her friends without conducting an evidentiary hearing; (4) the trial court did not allow defendant to offer as substantive evidence a statement that she made to an investigating police officer shortly after the accident; and (5) defendant did not receive the effective assistance of counsel. After considering the supplemental briefs, we come to the same conclusion as we did in our earlier opinion. The playing at trial of defendant's conversation recorded in violation of the eavesdropping statute requires the reversal of her conviction and a remand for a new trial.

Following a car accident that caused the deaths of Stephen Cornelius and his eight-year-old son, Zachery, defendant was charged with

reckless homicide and aggravated driving while under the influence of drugs (625 ILCS 5/11—501(d)(1)(C) (West 1996)). Before trial, the State nol-prossed the charges that were based on driving under the influence of drugs.

The evidence at trial revealed that the accident in question took place on September 25, 1996, at the intersection of 79th Street and Clarendon Hills Road in Willowbrook. Defendant, who was driving a 1995 Ford Escort station wagon, was traveling south on Clarendon Hills Road when her car left the road and entered the ditch on the west side of the road. Defendant's car traveled through the ditch for approximately 300 feet, exited the ditch, traveled another 70 feet, and then ran into the driver's side of the Cornelius vehicle, a 1992 Pontiac Bonneville, which was stopped on 79th Street at a stop sign. Stephen Cornelius was driving the Bonneville, and Zachery was seated directly behind him. Barbara Hall, Stephen's wife and Zachery's mother, was also in the car at the time of the collision, as was the couple's 10-year-old daughter, Jane, who was seriously injured. The State's accident reconstruction expert opined that defendant's car was traveling 42 miles per hour at the time of impact. Defendant's accident reconstruction expert opined that her speed at impact was 31 miles per hour.

At trial, the State presented the theory that defendant purposely drove her car into and through the ditch in an attempt to either kill herself or feign suicide to attract the attention of her family and friends. Defendant testified that she was not trying to commit suicide. She stated that she remembered turning on her right turn signal and the next thing she remembered was being stopped next to a telephone pole.

In addition to other evidence that defendant was contemplating suicide, the State presented a tape-recorded conversation between defendant and Nagayo "Nick" Heath, a close friend of defendant's at the time of the accident. The recorded conversation took place on the evening of September 26, 1996, the day after the accident.

Heath testified that on the morning of September 26, 1996, he received a phone call from defendant, who said that she had hit a tree and was in the hospital. Later that day, defendant called Heath and another friend, Jason Taylor, at the home of Beth Johnson. Heath talked to defendant, who told him that she had killed two people. Heath testified that defendant said that "[s]ubliminally [she] pulled a Justin." This was a reference to another friend of defendant's, Justin Krause. Heath testified that on September 23, 1996, defendant told him that Krause had tried to kill himself by driving his car into a tree.

From Beth Johnson's house, Heath then went to work, where he received a message from the Willowbrook police department. Heath

spoke with Officer Andy Pellicioni and arranged to meet him the following day or the day after. From work, Heath went to Jason Taylor's house. Defendant called Taylor's house that night at 8 or 9 p.m. Heath spoke with defendant and asked her if she meant to commit suicide. Defendant did not respond. Taylor and Heath decided to tape-record their next conversation with defendant because they had been contacted by the police and wanted to protect themselves.

Defendant paged Jason Taylor at about 10 p.m., and Taylor called her back. While Heath was talking to defendant, Taylor, who was listening on another extension, recorded the conversation. Defendant did not know that Taylor was recording the conversation. The record submitted to this court does not include the tape recording or a transcript of the tape recording. Certain portions of the tape, however, are quoted in the report of proceedings. These portions indicate that, during their conversation, Heath asked defendant, "Did you or did you not wish to end your life?" Defendant replied "yes." Heath then said, "Okay. That's a starting stone, it's somewhere for me to go from here. Now, we established why because of your family life, you know, and your new found friend, illness, what have you." Defendant again responded "yes."

Before trial, defendant brought a motion to suppress her recorded conversation with Heath. She argued that the language of the Illinois eavesdropping statute (720 ILCS 5/14—1 et seq. (West 1996)) barred the admission of the tape and that the investigating police officers had arranged and directed the tape recording without giving her any warning. The trial court ruled that Heath did not violate the statute by recording his own conversation with defendant and that this would be true even if the police department had instigated the recording.

In her posttrial motion, defendant asserted that it was error for the trial court to deny her motion to suppress without conducting an evidentiary hearing to establish whether the investigating police officers were involved in the recording. Defendant did not request an evidentiary hearing during trial. During the hearing on the posttrial motion, the trial court asked counsel for defendant if he had any evidence that the Willowbrook police department instigated or arranged the tape recording. Defense counsel admitted that he had no such evidence. In ruling on the posttrial motion, the trial court noted that the evidence indicated that Heath recorded his conversation with defendant entirely of his own volition. The trial court further stated that suppression was not available to defendant under such a circumstance.

■ We first consider defendant's argument that the trial court erred by denying the motion to suppress without holding an evidentiary hearing to determine whether the Willowbrook police depart-

ment instigated or arranged the recorded conversation. We note initially that, because defendant did not request an evidentiary hearing before or during trial, this issue is waived for the purposes of our review. *People v. Enoch*, 122 Ill. 2d 176, 186-87 (1988). This issue does not merit consideration under the plain error doctrine because there was no error and defendant has not shown that the failure to conduct an evidentiary hearing contributed to her conviction (see *People v. Sullivan*, 72 Ill. 2d 36, 44 (1978)).

At trial, Nick Heath, Jason Taylor, and Officer Pellicioni all testified that the police did not suggest, request, or otherwise arrange the recording. During the hearing on the posttrial motion, defendant conceded that she had no evidence to support her theory that the investigating officers were involved with the recording. We find this case analogous to *People v. Govin*, 213 Ill. App. 3d 928, 935-36 (1991). In *Govin*, the court considered whether it was error for the trial court to deny the defendant an evidentiary hearing on his motion to suppress tapes of a wiretap. *Govin*, 213 Ill. App. 3d at 935-36. The court held that the trial court correctly denied the request for an evidentiary hearing because the defendant did not specify which portions of the affidavit supporting the wiretap request were false and did not offer any evidence to support his claim that the affidavit contained false statements. *Govin*, 213 Ill. App. 3d at 935-36. In the present case, defendant presented no evidence to support her theory of police involvement; thus, there was no reason for an evidentiary hearing and no harm to defendant.

■ We must disagree, however, with the trial court's denial of defendant's motion to suppress. We conclude that the plain language of the Illinois eavesdropping statute bars the admission of the recording and that it was reversible error for the trial court to admit the recording into evidence. Although defendant failed to raise this issue in her appeal, we consider it because it involves, in our view, a grave error of law. As we stated in *People v. Olsewski*, 257 Ill. App. 3d 1018 (1994), "[w]hile the general rule is that a reviewing court should not normally search the record for unargued and unbriefed reasons to reverse the trial court judgment, a reviewing court need not ignore grave errors of law which the parties on appeal either overlook or decline to address." *Olsewski*, 257 Ill. App. 3d at 1021-22; see also *People v. Cortes*, 181 Ill. 2d 249, 282 (1998).

The State contends that the supreme court's supervisory order casts doubt on the propriety of our reliance on *Olsewski* and *Cortes* and impliedly indicates that the supreme court did not consider the trial court's error to be grave. We do not take the supreme court's supervisory order to mean anything more than what it says. The

supervisory order was silent regarding the substance of our conclusions on the eavesdropping issue. Accordingly, we cannot agree with the State that the supreme court disagreed with our determination that the trial court committed a grave error of law, and we stand by that determination.

■ The eavesdropping statute provides that a person commits eavesdropping when he:

"[u]ses an eavesdropping device to hear or record all or any part of any conversation unless he does so (1) with the consent of all of the parties to such conversation." 720 ILCS 5/14—2(a) (West 1996).

Effective December 15, 1994, section 14—1(d) of the eavesdropping statute defined "conversation" as "any oral communication between 2 or more persons regardless of whether one or more of the parties intended their communication to be of a private nature under circumstances justifying that expectation." 720 ILCS 5/14—1(d) (West 1996). Section 14—5 provides that any evidence obtained in violation of the statute is inadmissible in any civil or criminal trial, with the sole exception of trials for a person charged with violating the eavesdropping statute. 720 ILCS 5/14—5 (West 1996).

In denying defendant's motion to suppress, the trial court relied on our supreme court's interpretation of the eavesdropping statute in *People v. Beardsley*, 115 Ill. 2d 47 (1986), and *People v. Herrington*, 163 Ill. 2d 507 (1994). In *Beardsley*, the supreme court held that the primary factor in determining whether eavesdropping has occurred is whether the nonconsenting participants "intended their conversation to be of a private nature under circumstances justifying such expectation." *Beardsley*, 115 Ill. 2d at 54. Relying on *Lopez v. United States*, 373 U.S. 427, 10 L. Ed. 2d 462, 83 S. Ct. 1381 (1963), the court further held that the eavesdropping statute should not prohibit a party to a conversation from recording that conversation. *Beardsley*, 115 Ill. 2d at 56. Likewise, in *Herrington*, the supreme court held that "there can be no expectation of privacy by the declarant where the individual recording the conversation is a party to that conversation." *Herrington*, 163 Ill. 2d at 510, citing *Beardsley*, 115 Ill. 2d at 56.

However, by adding the definition of "conversation" to the statute in 1994, the Illinois legislature "extended the coverage of the eavesdropping statute to all conversations, regardless of whether they were intended to be private" (*People v. Siwek*, 284 Ill. App. 3d 7, 14 (1996)). See also *In re Marriage of Almquist*, 299 Ill. App. 3d 732, 736-37 (1998) (holding that the amended statute "prohibits the recording of any conversation without the consent of all parties regardless of any party's expectation of privacy"). The amended statute was in effect at all times relevant to the present case. Based on the plain language of

the statute and the fact that the conversation was recorded without defendant's consent, we cannot ignore the trial court's grave error of law in admitting the tape recording.

The State concedes that our interpretation of the eavesdropping statute is "probably correct," but asserts that (1) the conversation fell within a statutory exemption, (2) defendant waived any objection to the admission of the recording, and (3) the admission of the recorded conversation was harmless error. We disagree with all of these contentions.

■ Section 14—3 of the Criminal Code of 1961 (720 ILCS 5/14—3 (West 1996)) sets forth certain activities that are exempt from section 14—1. The State relies on section 14—3(i), which provides that the following is not a criminal offense:

"Recording of a conversation made by or at the request of a person, not a law enforcement officer or agent of a law enforcement officer, who is a party to the conversation, under reasonable suspicion that another party to the conversation is committing, is about to commit, or has committed a criminal offense against the person or a member of his or her immediate household, and there is reason to believe that evidence of the criminal offense may be obtained by the recording." 720 ILCS 5/14—3(i) (West 1996).

At trial, when the State asked Nick Heath why he and Jason Taylor decided to record their conversation with defendant, Heath responded, "Because we had no clue as to what was going on." The State asked Heath to clarify his statement, and the following question and answer took place:

"Q. What do you mean by that? Can you explain why you felt it was necessary to tape the conversation with Sarah Nestrock?

A. At this time we knew that she was in an accident that we were not involved with. We were just the last two people to see her that day.

I get a phone call at work from Willowbrook Police Department. And not knowing which way to turn, we thought it would be in our better interests to protect us."

On cross-examination the following colloquy occurred:

"Q. Now, sir, you went and talked about this conversation with Jason Taylor; is that correct?

A. We touched on it briefly as a way to protect ourselves.

Q. As a way to protect yourself? What were you going to protect yourself from, sir?

A. We did not know at that time. We were both looking at each other with blank stares.

We received a telephone call about an accident to [sic] which we were not involved in about a friend. And we did not know what to

do. We thought it would be in our better interests to tape the telephone conversation."

When defense counsel asked Jason Taylor on cross-examination why he recorded the conversation with defendant, he answered:

"Because we felt that we were getting kind of scared because the police were contacting us. We felt we had knew [sic] that Sarah—it was not an accident that she had went [sic] off the road. And we wanted something to back us up."

■ In light of the above testimony, we cannot accept the State's argument that Heath and Taylor suspected that defendant was about to commit a crime against them. It is clear from Heath's and Taylor's testimony that while they felt the need to protect themselves they did not suspect that defendant was about to commit a crime against them. Neither Heath nor Taylor mentioned any such suspicion when directly asked why they felt the need for protection. In fact, Heath testified that he did not know from what or whom he needed to protect himself. The State argues that "it was not unreasonable for Heath and Taylor to believe that the defendant could ultimately implicate them in a charge of obstruction of justice, perjury, or even complicity in the reckless homicide." We need not decide whether such a suspicion was reasonable because the testimony establishes that neither Heath nor Taylor held such a belief. Therefore, the recording of their conversation with defendant does not come within the exemption.

The State also cites cases that stand for the proposition that evidence obtained by federal law enforcement officials in accordance with constitutional and federal statutory requirements is admissible in an Illinois court even though the evidence was not obtained in accordance with the Illinois eavesdropping statute. While the State contends that the principle behind these cases should prompt us to deem the conversation in question admissible, we decline to do so, finding no similarity whatsoever between the cases the State cites and the case before us.

■ Next, the State maintains that defense counsel acquiesced in the admission of the tape and therefore waived the right to raise this issue on appeal. There are several grounds on which we could rule that defendant has waived this issue. However, it is well established that plain error is an exception to the waiver rule. *People v. Enoch*, 122 Ill. 2d 176, 189-90 (1988). As we have already explained, we consider the trial court's misapplication of the eavesdropping statute to be a grave error of law that we choose to address in spite of any waiver by defendant.

The State also argues that the admission of the tape recording was harmless error. We disagree. From those portions of the tape quoted in

the report of proceedings, we conclude that the admission of the tape prejudiced defendant and was not harmless. The jury could have regarded defendant's admission that she meant to end her life as the equivalent of a confession that she acted in conscious disregard of a substantial and justifiable risk to the safety of others, which was the most strongly contested issue in the case. Although the State presented other evidence suggesting that defendant was contemplating suicide, we cannot say that the jury would have convicted defendant if the tape had not been admitted.

The case the State relies upon, *People v. Taylor*, 166 Ill. 2d 414 (1995), is distinguishable from the case at bar. In *Taylor*, the State presented testimony to a capital sentencing jury from two jail guards regarding the defendant's statements, which they heard through voice monitors placed in the jail cells. In determining that the defendant's counsel was not ineffective for failing to argue that the defendant's statements were obtained in violation of the eavesdropping statute, the court noted that the guards' testimony regarding the overheard statements did not "differ effectively from the [picture of the defendant] created by the other evidence in aggravation." *Taylor*, 166 Ill. 2d at 436. The court had noted earlier that the record was "replete with evidence amply supporting the jury's decision that there are no mitigating factors sufficient to preclude the imposition of a sentence of death." *Taylor*, 166 Ill. 2d at 432. Here, on the other hand, the evidence against defendant was closely balanced. Unlike the court in *Taylor*, we cannot say that the outcome would have been the same even if the improperly recorded conversation had not been admitted.

The State's final argument on this issue is that this court should engage in a balancing of defendant's rights and the victims' rights when deciding this case. The State cites the Rights of Crime Victims and Witnesses Act (Act) (725 ILCS 120/1 *et seq.* (West 1996)) and the crime victims' rights amendment to the Illinois Constitution (Ill. Const. 1970, art. I, § 8.1). Neither the Act nor the amendment lends any support for the approach the State suggests. This court certainly feels sympathy for the victims' grievous loss. However, as the State well knows, courts must base their decisions on the law, not on sympathy. At the risk of stating the obvious, the Act and the amendment do not alter the fundamental principles on which our legal system is based. Those principles mandate that a conviction based on illegally obtained, inadmissible evidence cannot stand.

For double jeopardy purposes, we find, after reviewing the record, that there was sufficient evidence for the jury to determine that defendant was guilty beyond a reasonable doubt. Therefore, the State may proceed with a new trial against defendant. See *People v. Taylor*, 76

Ill. 2d 289, 309-10 (1979). In so holding, we in no way imply that we have made a finding as to defendant's guilt or innocence that is binding on retrial. See *People v. Taylor*, 76 Ill. 2d at 310.

We next consider defendant's arguments that the trial court erred by (1) allowing the State to make references to defendant's membership in Cornerstones, an organization for gay students; (2) allowing the State's reconstruction expert to offer the opinion that defendant consciously drove through the ditch; and (3) barring defendant from offering as substantive evidence a statement she made to Officer Handzik following the accident. Preliminarily, we note that defendant did not object at trial to the State's references to Cornerstones or to the allegedly improper expert testimony. Nonetheless, we will consider these issues, along with the hearsay issue, in the interest of judicial economy, because they will likely arise during the new trial.

■ Defendant claims that she was prejudiced by the State's references, both in opening argument and examination of several witnesses, to her membership in Cornerstones, an organization for gay students at the College of Du Page. Improper remarks by a prosecutor do not warrant reversal unless they were so prejudicial that they were a material factor in convicting the defendant. *People v. Falconer*, 282 Ill. App. 3d 785, 789 (1996). The standard of review in making this determination is similar to the plain error analysis. *People v. Henderson*, 142 Ill. 2d 258, 323 (1990).

In the present case, we find that the prosecutor's remarks were not improper and, consequently, they were not prejudicial. Two of the State's own witnesses belonged to Cornerstones, and the evidence indicated that defendant met these witnesses through Cornerstones. Defendant also testified that she was on her way home from a Cornerstones meeting when the accident happened. Clearly, there were reasons for the State to mention Cornerstones. The trial court, which was in the best position to determine whether the remarks were improper and prejudicial, found that the tone of the trial was not inflammatory and not prejudicial to defendant. Based on our review of the record, we agree with the trial court and conclude that the State's references to defendant's membership in Cornerstones did not deny her a fair trial.

■ Defendant next asserts that the trial court improperly allowed the State's accident reconstruction expert, Jimmy Lee, to offer the opinion that defendant consciously drove through the ditch. Defendant claims that Lee's opinion was speculative. The admission of expert testimony is within the trial court's discretion, which we will not disturb absent an abuse of discretion. *People v. Miles*, 217 Ill. App. 3d 393, 403 (1991).

We begin by noting that we find no testimony in the record from Lee that defendant was a "conscious" driver at the time of the collision. Lee did offer the following testimony:

"Q. Sir, in addition to that, did you analyze or determine what, if any, sort of steering input was used on the Ford Escort prior to it hitting the Pontiac Bonneville?

A. Yes.

Q. And what are we talking about when we talk about steering input?

A. An input is the driver's action; turns left, turns right or maintains.

Q. This is an action that a conscious driver would do?

A. Yes.

Q. Were you able to determine if there were any steering input prior to the Escort hitting the Bonneville?

A. Yes.

Q. How many steering inputs were you able to find or determine?

A. There's [sic] at least three significant inputs. The act of driving is not one input here, one input there, it's maintaining. So in my opinion the steering was maintained throughout the course of this path."

It appears to us that, when answering whether a steering input is something that a "conscious" driver would do, Lee was explaining the term "steering input," not giving an opinion about defendant's mental state at the time of the accident. Furthermore, we agree with the trial court that Lee's opinion that defendant made at least three steering inputs while driving through the ditch was based on his review of the physical evidence and reconstruction of the events leading up to the collision. It was not error to allow this testimony.

■ Last, we address defendant's argument that the trial court erroneously barred her from offering her statement to Officer Handzik as substantive evidence. According to the record, Officer Handzik was the first police officer who arrived at the scene of the collision and was the first person defendant spoke to after the accident. Officer Handzik testified that his conversation with defendant took place approximately 10 to 15 minutes after he arrived on the scene. Officer Handzik further testified that defendant told him that she intended to turn right from Clarendon Hills Road onto 79th Street and that she remembered activating her turn signal but was not aware of what happened up until her car came to rest. Before Officer Handzik gave this testimony, the trial court instructed the jury that his testimony about defendant's statement was being elicited only to demonstrate that the statement was made, and not for the truth of the statement.

Defendant argues that the statement was an excited utterance and

therefore should have been admitted as substantive evidence. We will apply an abuse of discretion standard to this issue, not a *de novo* standard as defendant urges. A reviewing court may review *de novo* a trial court's decision that a statement is hearsay when the determination does not involve fact finding or weighing the credibility of the witnesses. *People v. Aguilar*, 265 Ill. App. 3d 105, 109 (1994). In the present case, however, the trial court's determination of whether defendant's statement fell under the excited utterance exception involved fact finding and assessing the credibility of the witnesses. To qualify as an excited utterance, the proponent of the evidence must demonstrate "(1) the occurrence of an event or condition sufficiently startling to produce a spontaneous and unreflecting statement; (2) absence of time to fabricate; and (3) a statement relating to the circumstances of the occurrence." *People v. Smith*, 152 Ill. 2d 229, 258 (1992). In the case before us, the trial court ruled that defendant did not establish that her statement was an excited utterance because she did not show a lack of opportunity to reflect and fabricate. Under the facts presented, the trial court did not abuse its discretion. Any future ruling on this issue will likewise depend on the facts presented on retrial.

Defendant also argues that she was denied a fair trial due to ineffective assistance of counsel. In light of our determination to reverse defendant's conviction and remand this cause, we need not consider this argument.

For the reasons stated, we reverse defendant's conviction and remand this cause to the circuit court of Du Page County for a new trial.

Reversed and remanded.

INGLIS and HUTCHINSON, JJ., concur.