In the

# United States Court of Appeals

### For the Seventh Circuit

No. 12-1076

MARY CARROLL,

*Plaintiff-Appellant,*

*v.*

MERRILL LYNCH, JIM KELLIHER, and
PAT KELLIHER,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 07-CV-01575—**Rebecca R. Pallmeyer**, *Judge.*

ARGUED SEPTEMBER 24, 2012—DECIDED OCTOBER 16, 2012

Before BAUER, FLAUM, and HAMILTON, *Circuit Judges.*

FLAUM, *Circuit Judge.* On Thanksgiving Day at about
9:00 PM, Mary Carroll telephoned one of her co-workers,
Jim Kelliher. Hearing Ms. Carroll loudly yelling at her
husband over the phone, Jim Kelliher's wife Pat Kelliher
began listening in on the call and decided to record the
conversation. The call ultimately cost Carroll her job, and
she sued under the Illinois eavesdropping statute for
the recording and re-playing of the call. The district

court granted defendants' motion for summary judgment, concluding that the recording fell within the statute's fear of crime exemption. Because Ms. Carroll offers no evidence creating a genuine issue of material fact and defendants are entitled to judgment as a matter of law, we affirm.

## I. Background

### A. Factual Background

In 2005, Mary Carroll and Jim Kelliher were co-workers at Merill Lynch. That same year, Ms. Carroll lodged a complaint with human resources that led to the firing of two other Merrill Lynch employees. Restructuring of employment responsibilities followed and a supervisory position opened up. Although Carroll said she was not interested in the position and did not apply, she nevertheless felt "overlooked" when Merrill Lynch hired someone else.

In October 2005, Ms. Carroll felt that Jim Kelliher—who apparently was not involved with Carroll's previous human resources complaint—was performing some of her job duties. Around 9:00 PM on Thanksgiving in 2005, Ms. Carroll called Jim Kelliher on his home phone to confront him about this perceived encroachment. As Carroll later admitted, she was "all riled up," "angry," and "enraged." She also described her behavior as "inappropriate[]" and "irrational[]," explaining to co-workers that she had "fucking snapped." Carroll even recognized the startling nature of her call, admitting that, if she

had received a similar call, she would have felt "threatened."

Pat Kelliher overheard Carroll's loud accusations blaring from the phone. Becoming concerned, she began listening in on the phone call from another receiver in a different room. As Ms. Carroll's rant continued, Pat Kelliher became increasingly concerned and upset. She pushed the "record" button on her answering machine and recorded the rest of the call. Pat Kelliher later explained why she made the recording:

> Because I was scared. You know, it was late on Thanksgiving night. It was past 9:00 o'clock at night. There's somebody on the other end yelling at my husband and using profanity, and I hear my husband saying, "I don't know what you're talking about." "Can you please explain?" I hear him, you know, in a calm voice. I hear an escalation in the voice of the person who was calling. I had no clue who this person was. I got scared that somebody was very angry for an unknown reason that I could tell in the part that I listened to, and I felt that, you know, this person was going to come to our house, throw a brick through our window, that they were going to do something that night. And I got scared. And I wanted—that if we had to involve the police that I could say "You know what? This person, I don't know who they are, but this is what's scaring me."

When the call finally ended, Pat Kelliher told her husband, "I'm scared and I think we should call the police."

Despite Pat Kelliher's concerns, the Kellihers did not call the police that night. Jim Kelliher did call his supervisor at Merrill Lynch, though, and reported Ms. Carroll's phone call. The next day, at his supervisors' request, Jim Kelliher played the recording. After work that day, the Kellihers reported Carroll's call to the police.

Two months later, in January 2006, Ms. Carroll filed her own police report, accusing the Kellihers of violating the Illinois eavesdropping statute. The following month, Merrill Lynch fired Carroll for her conduct on the call, and she then filed this suit against Jim Kelliher, Pat Kelliher, and Merrill Lynch. Among other claims, her complaint alleged civil violations of the eavesdropping statute arising from Pat Kelliher's recording of the call and the subsequent use of the recording by Jim Kelliher and Ms. Carroll's supervisors at Merrill Lynch.[1]

### B.  Procedural Background

Before the district court, defendants moved for summary judgment. They also moved to strike Carroll's response to the statement of undisputed facts and her statement of additional facts. The district court recog-

---

[1] Ms. Carroll's other claims included sex discrimination, hostile work environment, and retaliation claims under Title VII; breach of contract; violations of the Illinois Wage and Payment Collection Act; tortious interference; intrusion upon seclusion; and intentional infliction of emotional distress.

nized deficiencies in these filings, which did not conform to Local Rule 56.1(b)(3), but nevertheless refused to strike the deficient pleadings and instead "attempted to identify disputes of fact." *Carroll v. Merrill Lynch*, No. 1:07-cv-01575, 2011 WL 1838563, at *1 n.1 (N.D. Ill. May 13, 2011). Where Ms. Carroll did "not offer a statement responsive to Defendants' facts," though, the district court accepted defendants' version as true. *Id.*

Reaching the merits of the summary judgment motion, the district court held for defendants on all claims, finding no genuine dispute as to material fact. *Id.* at *24. Ms. Carroll now appeals only the district court's grant of summary judgment on her claim that Pat Kelliher's recording violates the Illinois eavesdropping statute.

## II. Discussion

Defendants are entitled to summary judgment on the eavesdropping claims. We review motions for summary judgment de novo. *Bennett v. Roberts*, 295 F.3d 687, 694 (7th Cir. 2002). Summary judgment is proper when, viewing all facts and inferences in favor of the non-moving party, no genuine dispute as to material fact exists, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Hudson Ins. Co. v. City of Chi. Heights*, 48 F.3d 234, 237 (7th Cir. 1995).

Illinois law prohibits recording a telephone conversation without the consent of all parties. 720 ILCS 5/14-2(a)(1). It also prohibits the subsequent use or dis-

semination of any information obtained through an unauthorized recording. *Id*. at § 2(a)(3). The fear of crime exemption, however, allows unconsented recordings when: (1) the recording is made by or at the request of a person who is a party to the conversation; (2) under a reasonable suspicion that another party to the conversation is committing, is about to commit, or has committed a criminal offense against that person or a member of his or her immediate household; and (3) the recording may yield evidence of that criminal offense. *Id*. at § 3(i).

On appeal, Ms. Carroll principally challenges only the second element—whether Pat Kelliher had a reasonable suspicion to believe that Carroll was committing, was about to commit, or had committed a criminal offense against Pat Kelliher or someone in her immediate household.[2] She argues both that genuine disputes

---

[2] The fear of crime exemption only authorizes recordings made by or at the request of a "party to the conversation." 720 ILCS 5/14-3(i). Arguably, Pat Kelliher was not a party to the conversation because she did not participate vocally. *See id*. at § 1(d) (defining conversation as an "oral communication between 2 or more persons"). Nevertheless, Ms. Carroll did not raise this argument before the district court or in her opening brief. When she finally did raise this argument in her reply brief, she cursorily did so in only one sentence. As a consequence, this argument is waived. *See Coleman v. Hardy*, 690 F.3d 811, 818 (7th Cir. 2012) (argument not raised before district court waived); *Crawford v. Countrywide Home Loans, Inc.*, 647 F.3d 642, 650 (7th Cir. 2011) ("underdeveloped argu-

(continued...)

of material fact exist and that defendants are not entitled to judgment as a matter of law. Additionally, she argues that the fear of crime exemption does not apply to the statute's ban on use or dissemination of unauthorized recordings.

### A. No Genuine Disputes of Material Fact Exist to Preclude Summary Judgment.

Not all disputes of fact preclude summary judgment. Such factual disputes must be both material *and* genuine. Fed. R. Civ. P. 56(a). The underlying substantive law governs whether a factual dispute is material: "irrelevant or unnecessary" factual disputes do not preclude summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And a factual dispute is genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Once the moving party puts forth evidence showing the absence of a genuine dispute of material fact, the burden shifts to the non-moving party to provide evidence of specific facts creating a genuine dispute. *Hudson Ins. Co.*, 48 F.3d at 237. Mere "metaphysical doubt as to the material facts" is not enough. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

Ms. Carroll accuses the district court of making improper credibility determinations and failing to

---

[2] (...continued)
ment" waived); *Dye v. United States*, 360 F.3d 744, 751 n.7 (7th Cir. 2004) (argument first raised in reply brief waived).

construe all factual disputes in her favor. According to Carroll, the district court improperly credited Pat Kelliher's testimony that a fear of crime motivated her to record the conversation. But nothing requires the district court to disbelieve defendants' proffered evidence simply because Ms. Carroll—without proof— asserts it is false. *See Argyropoulos v. City of Alton*, 539 F.3d 724, 732 (7th Cir. 2008) (noting inferences "supported by only speculation or conjecture" do not create genuine issue of fact (citation omitted)); *see also Koclanakis v. Merrimack Mut. Fire Ins. Co.*, 899 F.2d 673, 675 (7th Cir. 1990). Indeed, the law requires just the opposite: Ms. Carroll cannot rest on "metaphysical doubt" that Pat Kelliher lied but must produce evidence so showing. *See Matsushita Elec. Indus. Co.*, 475 U.S. at 586. She has not done so.

Instead, all Ms. Carroll offers is the suggestion of an economic motive behind the recording. True, Pat Kelliher expressed some worry that Carroll might jeopardize her husband's job. This evidence does not contradict her testimony that she feared commission of a crime so it does not create a genuine issue of material fact. *See Bd. of Trs. of Univ. of Ill. v. Ins. Corp. of Ir., Ltd.*, 969 F.2d 329, 334-35 (7th Cir. 1992) (no genuine issue of material fact where non-moving party's evidence did not contradict that of moving party); *see also Unterreiner v. Volkswagen of Am., Inc.*, 8 F.3d 1206, 1212 (7th Cir. 1993) (no genuine issue of material fact when non-moving party's evidence is "merely colorable, or is not sufficiently probative"). As Carroll's counsel admitted at oral argu-

ment, these two fears are not mutually exclusive.[3] Thus, in granting summary judgment, the district court simply relied on Pat Kelliher's unrebutted testimony that she feared "any number of" crimes and that this fear motivated her recording. Ms. Carroll's argument otherwise is nothing more than a "mere unsupported denial[]" of Pat Kelliher's testimony and does not create a genuine dispute of material fact. *See Koclanakis*, 899 F.2d at 675.

Ms. Carroll's reliance on her account of Jim Kelliher's conduct on the call fares no better in creating a genuine issue of material fact. Even assuming Carroll truthfully recalled that Jim Kelliher also yelled on the call, no reasonable jury could find that Pat Kelliher did not fear criminal activity given Ms. Carroll's own admissions that she yelled and cursed at Jim Kelliher. *See Outlaw v. Newkirk*, 259 F.3d 833, 838 (7th Cir. 2001) (no genuine issue of fact when "defendants would be entitled to summary judgment even assuming the truth of [plaintiff's] version of the incident"). Thus, while this testi-

---

[3] Ms. Carroll's assertion that the district court applied a "mixed motive" standard to this question is equally without merit— it merely recasts from a different mold her argument that the district court made credibility determinations. Additionally, Carroll also asserts in her reply brief that, without trial, she could not present evidence contradicting Pat Kelliher's deposition testimony. She could have proffered this evidence as a sworn statement attached to her papers opposing the summary judgment motion, though. *See* Fed. R. Civ. P. 56(c)(4); *cf. Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

mony creates a factual dispute, it does not generate a genuine dispute of material fact that precludes summary judgment.

Finally, citing *Glinski v. City of Chicago*, Ms. Carroll suggests that her inability to cross-examine Pat Kelliher creates a genuine issue of material fact. *Glinski v. City of Chi.*, No. 99 C 3063, 2002 WL 113884, at *7-8 (N.D. Ill. Jan. 29, 2002). But this places on *Glinski* an analytical load too heavy for that case to bear. *Glinski* did, as Carroll correctly asserts, recognize that the reasonable suspicion determination *in that case* "depend[ed] on the credibility of [the recorder's] testimony." *Id.* at *8. The reasonable suspicion determination *in this case*, however, does not hinge on Pat Kelliher's credibility: Ms. Carroll's own testimony corroborates Pat Kelliher's account of Carroll's conduct on the call. Moreover, "neither a desire to cross-examine an affiant nor an unspecified hope of undermining his or her credibility suffices to avert summary judgment." *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Argonaut Ins. Co.*, 701 F.2d 95, 97 (9th Cir. 1983). And an unspecified hope of undermining Pat Kelliher's credibility is all Carroll offers—she provides no evidence of specific facts suggesting that Pat Kelliher lied about her fear of crime or that Pat Kelliher otherwise lacks credibility.[4] Consequently, Ms. Carroll's bare desire to cross-examine Pat Kelliher does not defeat defendants' summary judgment motion.

---

[4] As explained below, Carroll's suggestion that Pat Kelliher suffered from psychological issues predisposing her to fearfulness completely lacks factual support.

At bottom, defendants have proffered evidence that a fear of crime motivated Pat Kelliher's recording of the phone call.[5] Carroll offers no evidence of specific facts contradicting or undermining this conclusion so no genuine dispute of material fact exists. The district court properly resolved this case on summary judgment.

## B. Defendants Are Entitled to Judgment as a Matter of Law Because the Undisputed Facts Show That the Fear of Crime Exemption Applies.

The Illinois eavesdropping statute exempts certain recordings made with a reasonable suspicion that the caller is committing or may commit a crime against the person requesting the recording or someone in that person's immediate household. 720 ILCS 5/14-3(i). Thus, the exemption requires (1) a subjective suspicion that criminal activity is afoot, and (2) that the suspicion be objectively reasonable. *Cf. People v. Allen*, 950 N.E.2d 1164, 1177 (Ill. App. Ct. 2011) (requiring objective reasonableness for reasonable suspicion in criminal case); *see also Ornelas v. United States*, 517 U.S. 690, 696-97

---

[5] Ms. Carroll also asserts that Pat Kelliher "presented not a single fact to support ANY of her Affirmative Defenses" and that "summary judgment is proper Against [sic] P. Kelliher in ALL of her pled Affirmative Defenses including the exemption defense." (Emphasis in original.) Setting aside that this statement badly distorts the record, Ms. Carroll never moved for summary judgment so her request on appeal for summary judgment against defendants lacks merit.

(1996). Pat Kelliher's fears arising from Carroll's conduct on the phone call satisfy both of these requirements.[6]

First, Ms. Carroll continues arguing that Pat Kelliher feared, not commission of a crime, but rather that Carroll would report her dispute with Jim Kelliher to the human resources department at Merrill Lynch. Because such a report is not criminal, she argues, Pat Kelliher's recording falls outside the fear of crime exemption. But Ms. Carroll ignores Pat Kelliher's unrebutted testimony that she feared the caller might vandalize her home that night. Indeed, Carroll's call itself may have been criminal: Illinois criminalizes phone calls made "with intent to abuse, threaten or harass any person at the called number." 720 ILCS 135/1-1(2). Thus, this case differs from *People v. Nestrock*, where neither defendant actually suspected or feared criminal activity.[7] *See* 735 N.E.2d 1101, 1108 (Ill. App. Ct. 2000). Thus, defendants

---

[6] Ms. Carroll also suggests that Pat Kelliher's recording falls outside the exemption because Carroll threatened Jim Kelliher, not Pat Kelliher. The statute clearly forecloses this argument: it permits a recording when the person reasonably suspects the commission of a crime "against the person [recording the conversation] *or a member of his or her immediate household*." 720 ILCS 5/14-3(i) (emphasis added).

[7] Ms. Carroll's reliance on *In re Marriage of Almquist*, 704 N.E.2d 68, 70-71 (Ill. App. Ct. 1998), is also misplaced. The exemption did not apply in that case because the subject of the recording was not the person feared to commit the crime. *Id.* Here, Carroll was both the person recorded and the person Pat Kelliher feared might commit a crime against Jim Kelliher, satisfying the exemption's statutory requirements.

have offered sufficient evidence establishing that Pat Kelliher subjectively feared criminal conduct against her husband.

Next, Ms. Carroll launches a volley of arguments attacking the reasonableness of Pat Kelliher's fear. All agree—even Carroll—on the threatening and abusive nature of the call. Given this agreement, Pat Kelliher's fear of crime is reasonable. Carroll's own testimony establishes this: she acknowledges that she was "enraged," "all riled up," and had "fucking snapped"; and that she used profanity. These facts parallel *McWilliams v. McWilliams*, where the recorded individual made "repeated threats" and showed "aggression" against those who made the recording. No. 06 C 3060, 2007 WL 1141613, at *8 (N.D. Ill. Apr. 16, 2007). Ms. Carroll's attempt to distinguish *McWilliams* is unavailing. She lists numerous factual differences that, in her view, set *McWilliams* apart. These differences, however, have no connection to the statutory text—they do not change the fact that, however this case differs from *McWilliams*, it still satisfies the elements of the fear of crime exemption.[8] Moreover, that Carroll did not make death threats,

---

[8] For example, in *McWilliams*, police were present during the recording, the recording was based on prior unrecorded calls, the caller was aware of the recording, the caller was arrested and the recording used in subsequent criminal proceedings, the recording was not used in making employment decisions, and the recording was immediately turned over to the police. 2007 WL 1141613, at *1-2, 8. Applicability of the exemption,

(continued...)

as the caller in *McWilliams* did, 2007 WL 1141613, at *8, is irrelevant. The exemption applies to any crime, not just homicide.

Ms. Carroll next accuses Pat Kelliher of having "personal mental problems" that predispose her to "fearfulness," making her suspicion of crime unreasonable. Even assuming that psychological propensities do influence the reasonableness determination, Carroll offers no evidence that Pat Kelliher did, in fact, have personal mental problems predisposing her to fearfulness. The only record support to which Carroll points is Pat Kelliher's admission that she on occasion sought the counseling of clergy. Such counseling in no way suggests the presence of "personal mental problems," a condition that Pat Kelliher actually denied. Moreover, the transcript excerpt on which Ms. Carroll relies does not even mention fearfulness. In any event, as explained above, Carroll's own deposition testimony provides sufficient factual support for the reasonableness of Pat Kelliher's suspicions of criminal conduct.

Finally, Ms. Carroll argues—for the first time in her reply—that the state's decision not to prosecute her for the phone call shows that Pat Kelliher's fear of crime was unreasonable. *See Blount v. Stroud*, 915 N.E.2d 925, 950 n.6 (Ill. App. Ct. 2009) (noting absence of prosecu-

---

[8]  (...continued)

however, does not hinge on any of these facts. Thus, their absence from the circumstances surrounding Pat Kelliher's recording, which independently satisfies the exemption's elements, does not distinguish *McWilliams*.

tion for eavesdropping in concluding fear of crime exemption would likely apply). Because not raised in her opening brief, Ms. Carroll has waived this argument. *See Dye*, 360 F.3d at 751 n.7. Even so, the exemption does not require proof beyond a reasonable doubt or even the probable cause required for arrest or indictment. Instead, it requires something far less—reasonable suspicion. *See Terry v. Ohio*, 392 U.S. 1, 27 (1968). Thus, that the district attorney did not charge Carroll with any crime—either telephone harassment or something else—does not preclude Pat Kelliher from reasonably believing that Carroll was committing or would commit a crime against Jim Kelliher.

Ultimately, the undisputed facts reveal that Pat Kelliher worried that the unidentified, threatening caller might commit a crime against her husband and that fear was reasonable. Thus, her recording satisfies the fear of crime exemption under the Illinois eavesdropping statute, and summary judgment for the defendants is proper.

## C. Because the Fear of Crime Exemption Applies, No Continued Use Violations Occurred.

In addition to making recordings without consent, the eavesdropping act also prohibits "us[ing] or divulg[ing] . . . any information which [a person] knows or reasonably should know was obtained through the use of an eavesdropping device." 720 ILCS 5/14-2(a)(3). Ms. Carroll now argues that the fear of crime exemption does not apply to this provision of the eavesdropping statute.

Section 5/14-3, which contains the fear of crime exemption, explains that the "following activities shall be exempt from the provisions of this Article." Thus, the exemptions apply to all parts of the eavesdropping act, including the prohibition on using and divulging recorded information. Ms. Carroll offers no Illinois authority—and we have found none—permitting the disregard for the plain text of the statute that her argument requires. Senator Dillard's floor statements, which reveal one statutory purpose of allowing private individuals to collect evidence to assist a future criminal prosecution, are not to the contrary. *See* 1996 Ill. Att'y Gen. Op. No. 036 (quoting Senate Debates, 88th Ill. Gen. Assem., Apr. 21, 1994, at 139-40 (statement of Sen. Kirk Dillard)). Nothing in this statement and—more importantly, nothing in the text—limits the fear of crime exemption to the particular use of re-playing the recording to assist in a criminal prosecution. Consequently, because the fear of crime exemption applies to all parts of the eavesdropping act and because Pat Kelliher's recording falls within this exemption, Jim Kelliher and other Merrill Lynch employees did not violate the eavesdropping act when they re-played the recording of Ms. Carroll's call for Carroll's supervisors at Merrill Lynch.[9]

---

[9] Because defendants' conduct falls within the fear of crime exemption, we need not reach the district court's conclusion that Carroll suffered no damages from the recording.

### III.  Conclusion

For the foregoing reasons, we AFFIRM the district court's grant of summary judgment for defendants.